**Bernt Wahl (Defendant)**
P.O. Box 13991
Berkeley, CA 94712
(510) 647-9205

Representing Factle and self

FILED

FEB 2 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT.
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

MAPONICS, LLC,

a Vermont limited liability company,

DARRIN CLEMENT, an individual:

and DOES 1- 40 inclusive.

                    Plaintiffs.

          vs.

BERNT WAHL, an individual:

FACTLE, a California corporation

and DOES 1- 20 inclusive.

                    Defendants.

**Case Number:** 3:07-cv-5777, C-07-5777BZ

**RELIEF FROM CLAIMS AND ASSERTED**

**DAMAGES OF COPYRIGHT**

**INFRINGMENT; REMOVAL OR**

**ALTERATION OF COPYRIGHT**

**MANAGEMENT INFORMATION**

Update of 2-12-2008

Bernt Wahl

Defendant Bernt Wahl ("Factle" or "Defendant(s)") requests a stay of **CLERK'S Notice for ENTRY OF**

**DEFAULT Against Defendants Bernt Wahl & Factle (tn, COURT STAFF) (Filed on 1/31/2008)**

since the Defendant(s) were not: served with any documents, notified of any hearing, provided with any

trial dates or given a chance to respond to the pending case 3:07-cv-5777. On February 7, 2008,

Defendant(s) learned of a **CLERK'S Notice for ENTRY OF DEFAULT** for a prior unknown 'event'

assumed to be a hearing. On inspection of court documents on February 8, 2008, Defendant(s) have now

1

1    learned that the most likely scenario for document service was to a woman described as "Jane Doe", 5'3"

2    in height with blue eyes. A second set was supposedly sent to a non-existent address - 1911 Martin L.

3    King Jr. Way #3 in Berkeley, CA, 94704. Under mysterious circumstances a person "known to the

4    police" may have accessed information contained in case documents. Upon investigation by the United

5    States Postal Service, the postal inspector referred to contacted with "the assumed serving" party as

6    "uncooperative".

7    It is also requested that all Plaintiffs officers, investors and interested parties be named including Darrin

8    Clements and Maponics' shareholders, investors, and those holding a vested interest.

9    Additionally Defendant(s) request relief from unwarranted allegations and request dismissal of charges

10    brought against the Defendants for allegations including alleged copyright infringement unless they can

11    be substantiated in some form. Defendant(s) have never had any business dealings with Maponics/Darrin

12    Clements. Both parties, Plaintiffs and Defendant(s) (primary author), did have co-licensees of the original

13    HomeGain "neighborhood boundary layer" until Plaintiff purchased HomeGain data resulting in a 60-day

14    expiration clause of authorization to sell or lease HomeGain data to others. The Plaintiffs, it might appear

15    are trying to restrict or eliminate the Defendants right to market other's data, produce and distribute their

16    own data or restrict and/or eliminate the Defendants' right to retain data for which the Defendants have a

17    13-year use license. What Plaintiff(s) missed, chose to ignore, or at least did not mention or acknowledge,

18    is that Factle's products are displayed prominently on the Factle.com website's second page. It clearly

19    states that Factle's top level data is of a considerably higher level quality data set than TIGER data. The

20    boundaries had already been created and completed independently at roughly a TeleAtlas / Navteq-GDT

21    level of exactness by an independent party prior to Maponics's acquisition of any HomeGain Data.

22    Another fact that Maponics seems not to mention is that Factle offers a data set of over 300 cities, almost

23    double HomeGain's data set. The higher quality data set was created by experts in the field of GIS,

24    independent of HomeGain or its data. These items clearly indicate that unique content was either acquired

25    from different sources or created independently. HomeGain and then Microsoft were fully aware of at

2

1   least one of the independent projects and HomeGain later requested to fund the continued development of

2   one independent project where I served as an intermediary but the offer was turned down by the

3   developers. In fact in 2005, I was contacted several times by Microsoft on how the 'independent' project

4   was progressing because they wanted elements to tie into their new 'Virtual Earth'. After a demonstration

5   of the higher quality data was shown at HomeGain from one independent project, some employees at

6   HomeGain were interested in licensing the enhanced data set. Coincidently it was around that time when

7   HomeGain sold its TIGER quality data set (less precise) to Maponics.

8                                    **NATURE OF CASE.**

9   1. Defendant claims that no copyright infringement ever existed, and that the Plaintiff has over

10      stepped his bounds in exerting rights of a stated 'copyrighted' work. The arguments for non-

11      infringement are as follows:

12         a. The Defendant(s) retains license rights to use, display, post, any and all "neighborhood

13            boundary layer" work for a period of 13-years that expires in 2020 from the initial

14            neighborhood data provider HomeGain, see (exhibit 1. Contract and Letter).

15         b. The 'copyrighted' data set was never used as far as can be recalled by Factle for public

16            display, (and in fact the author Bernt Wahl was not aware of its existence in a

17            'copyrighted' form until court documents were provided). There may have been a brief

18            period, that a similar size/structured set was posted on an obscure portion of Factle's

19            website. It is hard to fathom how such a limited display of data would warrant anything

20            but an inquiry on who created the data or if it was based on someone else's work how the

21            permission was derived. If it was determined that the data might be there improperly a

22            reasonable request would be to obtain permission, or to remove it. In Factle's case, it

23            might have explained to the inquirer that it had independently generated the data or that

24            Factle had a licensed it from a third party such as HomeGain. Since similar information

25            has been publicly posted by others on their web sites for years it is assumed that no

3

proprietary data could be obtained. A list based primarily on the ranking cities of states in order of population to available data. One reason Factle is reluctant to post a full set of mapped data is that Maponics is a visitor to the Factle site. Evidence to support this- is if you type 'Factle Maps' in Google, you will find that Maponics has bought Google keyword advertising to be associated with our name. In November 2007 a smaller data set was replaced with a considerably larger list with over 450 + cities. These lists are generally created by a dynamic process based on the population size and availability of data for the cities, a natural and frequently used method to collect location data and thus would be assumed not infringe on a copyright. [PROCD, INCORPORATED, Plaintiff-Appellant, v. MATTHEW ZEIDENBERG and SILKEN MOUNTAIN WEB SERVICE, INC., Defendants-Appellees. UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT]. Other sources, such as Zillow and Urban Mapping, have similar neighborhood data sets to HomeGain's original data set.

It is doubtful that this type of data's copyright is enforceable, due to the fact that it is based on U.S. Census Data and other publicly available information sorted by a common non-proprietary algorithm that ranks cities by size or alphabetically. Phone books use a similar process to collect data by sorting phone numbers by alphabetical names (a non-copyrightable collection). [FEIST PUBLICATIONS, INC. v. RURAL TELEPHONE SERVICE CO., INC. No. 89-1909 SURPEME COURT OF THE UNITED STATES January 9, 1991, Argued, March 27, 1991 Decided.]

c. If intellectual elements were found to exist in the neighborhood data collection foundation, it would most likely be retained by the author (Bernt Wahl) who's foundation work on neighborhood creation methodology is published in: Exploring Fractals (1995) , African Fractals (1999), with ideas mentioned in West Contra Costa Times article (1995), WYP (1995), One World Many Places Project /Our World My Place (1995) which laid out the structures of location which neighborhoods constituted a subset and with the

1          companies where confidential local search work was done: Dynamic Software (1994),

2          RQ Labs (1998), YellowGiant (2000), InfoSeek/Disney (2000), InfoSeek -BOA, (2001),

3          and MMU research work (2002) - later called Factle (2004). While local

4          search/neighborhood technology was shared with HomeGain by Bernt Wahl in aiding

5          SEO, disclosed information was to remain confidential and was only to be used for

6          HomeGain's use or for Defendant's affiliate sites. It is believed that HomeGain has not

7          breached that confidentiality to others, but the Defendant would like to subpoena the

8          materials transferred to Maponics to verify this to be true. Since a majority of

9          HomeGain's neighborhood materials were created and/or inspired by Defendant's prior

10         research work including academic research (1994-2005) and his work with other

11         companies prior to HomeGain's neighborhood project -- the project was known "as your

12         neighborhood idea" referring to the Defendant's ideas .. [CLIFFORD SCOTT AYMES,

13         Plaintiff-Appellant, v. JONATHAN BONELLI, doing business as Island Swimming

14         Sales, Inc.; and ISLAND RECREATIONAL, Defendants-Appelles. Docket No. 92-7098,

15         UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT, September

16         14, 1992, Argued, December 2, 1992, Decided.], [WEXLER v. GREENBERG, Apellant.

17         THE SUPREME COURT PENNSYLVANIA, Agued November 19, 1959. May 4, 1960].

18         d.  While a copyright filing exists, there has been no documentation presented by the

19             Plaintiff that the author (Bernt Wahl) authorized or relinquished copyright to said

20             'copyrighted' work, that should be presented.

21                        **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT.**

22   2.  The Defendant argues that this case was filed in an inappropriate court jurisdiction based on a

23       highly overstated "neighborhood data" value and alleged damages that are "greatly" in excess of

24       any realistic value, thus enabling the Plaintiff the ability to reap an excessive amount of

25       damages. Evidence to excessive stated value claim:

5

1       The entire 'Neighborhood Mapping Layer' with boundaries and names (ownership and

2       distribution rights) were purchased from HomeGain for $40,000 in May 2007 (see page 17 of

3       C-07-5777BZ  Document 1) well under the $75,000 eligibility requirement. The value of the

4       location name asset in question constitutes less than 10% of the complete 'Neighborhood

5       Mapping Layer' purchased asset value based on Maponics data licensing structure (see

6       exhibit 3. below). Of the disputed data cited, city  data comprises less than 2% or

7       (~200/10,000 +) of the total location names.

8       **Exhibit 3.**

9       Under $10K - Neighborhood Boundaries

10      Under $5K  - Neighborhood Location Centers

11      Under $1K  - Neighborhood Names

12      Under $1K  - Neighborhood to ZIP Look Up

13      Maponics' posted pricing structure for data (February 2008)

14      **Cited:** http://www.maponics.com/Neighborhood_Boundaries/neighborhood_boundaries.html

15      a.   The highest price ever charged by HomeGain (based on Bernt Wahl's recollection) for

16          the complete rights to utilize the 'Neighborhood Boundaries and Names' was $5,000 for

17          a 5-year license. Even then, it was a hard sell and only 5 licenses were sold - one license

18          was to Maponics.

19    3. Maponics sells/licenses the neighborhood name data for "Under $1K  - Neighborhood Names"

20      (from Maponics web site  (2008)) the claim that use of 2% of a minority portion of a data

21      package that was purchased for $40,000 constitutes a value of over $75,000 should be considered

22      unreasonable . If data was prorated on a 10-year amortization schedule based on a 2% usage of

23      total location data over a 3-month period based on a 10-year - $1,000 license cost, that would

24      equate to about 50-cents.

6

1  4.  The only conceivable public place associated with Factle that a similar a data set existed to the

2      claimed "copyright" set of about 200 cities would have been on an obscure section of the

3      Defendant's website. It is estimated that there were around 50 total visits to that web page of

4      which at least a few visits it is assumed came from Maponics/Darrin Clement. That section was

5      updated with a new data set in November 2007 and now constitutes over 450 cities. If Defendants

6      had not secured a license from HomeGain to display the data that they did, and if data was

7      assessed at the standard $0.02 - $0.00.1 per use, the licensing fee for map data shown would not

8      total for more than about $1.00, far below the stated $75,000 minimum damages required to file

9      in U.S. Federal Court.

10  5.  That Factle is being singled out for a supposed copyright infringement for potentially a total of

11      roughly 50 page views, where other sites with almost exactly the same Factle license , that

12      actually use the exact HomeGain list of cities and neighborhoods with  millions of viewers each

13      month shown for over 4-years might seem strange. It may appear to some that these actions are

14      being taken to prevent competition in the area of neighborhood map data creation (an anti-trust

15      issue), rather than to recover any real economic damages.

16                          **FIRST CAUSE OF ACTION.**

17               **(Relief from Deceptive and Malicious Actions Against Defendants)**

18  6.  The Defendant(s) ask that evidence be provided for any statements and allegations brought

19      against the Defendant(s). Accusations that have been made seem to be unsubstantiated and appear

20      to be without merit. That Defendant Bernt Wahl, be removed from the lawsuit if no action can be

21      shown that he acted outside of the scope of his fiduciary duty as a corporate officer for Factle.

22                          **SECOND CAUSE OF ACTION.**

23                  **(Unfair Competition Monopolistic Practices)**

24  7.  That any false or misleading statements made by the Plaintiff(s) including Darrin Clement,

25      Maponics members, their shareholders, investors, employees, all those holding a vested interest,

26      agents, representatives, and all persons acting in concert or in any other fashion allied with

7

1        Maponics, about any Defendant(s), their work, their rights or their character made in a public

2        forum or in private communication be rescinded and that just compensation be made for loss of

3        potential income or harm to reputation in the amount to be proven at trial. The Plaintiff(s)

4        continuing actions are causing the Defendant(s) irreparable harm and the Plaintiff(s) are awarded

5        relief from such actions by the Court.

6    **8.** That the court allows reciprocated claims and actions used by the Plaintiff(s), to be used by the

7        Defendant(s) where applicable.

8                                   **PRAYER**

9    Wherefore, the Defendant(s) pray for relief and that a judgment is entered against each Plaintiff as

10   follows:

11  1.  That Plaintiffs including all their shareholders, investors, employees, all those holding a vested

12      interest, agents, representatives, and all persons acting in concert or in any other fashion allied with

13      Maponics be held financially liable and held to account for any and all false or misleading statements

14      made about the Defendants whether it be in falsely depriving economic opportunity or in defamation

15      of character. That the award take into consideration the Defendants' academic and industrial

16      reputation, as well as the effect that slander, liable and malice can have on the Defendants' credibility,

17      prestige, career, ability to earn an income, capabilities to conduct business, or  opportunity to

18      effectively influence the well-being of society. That punitive action be applied against the Plaintiff(s)

19      as awarded by the court where applicable.

20  2.  That Plaintiffs including all their shareholders, investors, employees, all those holding a vested

21      interest, agents, representatives, and all persons acting in concert or in any other fashion allied with

22      Maponics be held financially liable for knowingly or unknowingly creating false, misleading,

23      malicious, or purposefully ambiguous statements in the market of  Factle's rights to generate,

1    produce, purchase, acquire, distribute, manufacture, or in any other way distribute information or
2    conduct commerce.

3  3. That Plaintiff(s) relinquish confidential information to Defendant(s) if Plaintiffs are found to hold or
4     contain proprietary information, intellectual property or data that is held in ownership or by held in
5     authority to Plaintiffs.

6  4. That Plaintiffs are required to identify all contacts, discussions and postings in which Defendants
7     and/or their work was mentioned or referred to gauge the extent of any damages produced by
8     Plaintiffs for false or misleading statements.

9  5. That Plaintiffs be required to make a full disclosure and declaration to the extent false statements,
10    misleading statements and ambiguities statements were presented in the market by Plaintiffs' about
11    the Defendant's rights to generate data, distribute content, purchase data, sell data or produce data;
12    stated damages hereinwill be an amount proven in court or trial.

13 6. That Plaintiffs including all their shareholders, investors, employees, all those holding a vested
14    interest, agents, representatives, and all persons acting in concert or in any other fashion allied with
15    Maponics be required to pay for damages sustained (both economic and to reputation of character) for
16    actions and activities complained of herein in an amount proven in court or trial.

17 7. That Plaintiffs including all their shareholders, investors, employees, all those holding a vested
18    interest, agents, representatives, and all persons acting in concert or in any other fashion allied with
19    Maponics be held liable for any anti-trust or racketeering charges in trying to monopolize the
20    'neighborhood map' market assessed with punitive damages herein in an amount proven in court.

21 8. Attorney(s) and responsible parties are held financially liable if upon discovery it is shown that these
22    members were negligent in serving court documents resulting damages.

23 9. That Plaintiffs are required to make full restitution for violations of California Business and
24    Professions Code [SECTIONS 17200-17203]

25 10. That Plaintiffs are required to pay Defendants costs and reasonable attorney's fees as authorized by
26     law.

9

1    11. That Plaintiffs be required to pay prejudgment interest from the date of infringement or damaging

2        event and for postjudgment interest as allowed by law.

3    12. That Plaintiffs be required to pay punitive damages: as well

4    13. That Plaintiffs be required to pay other such damages and further relief as the Court deems reasonable

5        and proper.

6    Dated: February 16, 2008   v. 2.9

7                                              Respectfully Submitted,

8                                    By:    Bernt Wahl

9                                           Bernt Wahl - Factle
10                                          Defendant