Mark L. Pettinari (CA Bar No.: 119293)
LAW OFFICES OF MARK L. PETTINARI
Stock Exchange Tower
155 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:     (415) 240-4200
Facsimile:     (415) 240-4201
Email:         mlpettinari@mlplawoffices.com

*Attorneys for Defendants and Counter-Plaintiffs*
*Bernt Wahl and Factle*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAPONICS, LLC, a Vermont liability company, | Case No.:  C07-05777-BZ |
| Plaintiff, | **DEFENDANTS' ANSWER AND COUNTERCLAIM** |
| vs. | **DEMAND FOR JURY TRIAL** |
| BERNT WAHL, an individual, FACTLE, a California corporation, and DOES 1-20, inclusive, | |
| Defendants. | |
| BERNT WAHL, an individual and FACTLE a California corporation, | |
| Counterclaimants, | |
| vs. | |
| MAPONICS, LLC, a Vermont liability company and DARRIN CLEMENT, an individual, | |
| Counter-defendants. | |

1    Defendants BERNT WAHL (hereinafter "WAHL") and FACTLE (hereinafter

2  collectively referred to as "Defendants") answer the Complaint of Plaintiff MAPONICS,

3  LLC (hereinafter "Plaintiff") as follows:

4                    **NATURE OF THE CASE**

5    1.    Defendants deny each and every allegation set forth in Paragraph 1 of the

6  Complaint, except that Defendants admit that Plaintiff's Complaint seeks damages and

7  injunctive relief against Defendants stemming from a claim of infringement of United States

8  Copyright Registration No. VA 1-377-209, which was purportedly assigned to Plaintiff.

9         **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

10    2.    Defendants deny each and every allegation set forth in Paragraph 2 of the

11  Complaint, except that Defendants admit that the Court has jurisdiction over this matter

12  pursuant to Title 28 United States Code sections 1338 and 1367.

13    3.    Defendants deny each and every allegation set forth in Paragraph 3 of the

14  Complaint, except that Defendants admit that venue is proper in this district pursuant to Title

15  28 United States Code sections 1391 and 1400.

16    4.    Defendants admit the allegations set forth in Paragraph 4 of the Complaint.

17                       **THE PARTIES**

18    5.    Defendants admit the allegations set forth in Paragraph 5 of the Complaint.

19    6.    Defendants admit the allegations set forth in Paragraph 6 of the Complaint.

20    7.    Defendants are without information and belief sufficient to enable them to

21  answer the allegations set forth in Paragraph 7 of the Complaint and on that basis deny each

22  and every allegation set forth in Paragraph 7 of the Complaint, except that Defendants admit

23  that in Paragraph 7 of its Complaint, Plaintiff alleges claims against unknown parties

24  referred to as Defendants DOES 1 through 20.

25  / /

26  / /

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

8.    Defendants deny each and every allegation set forth in Paragraph 8 of the Complaint, except that Defendants admit that at various times prior to July 29, 2007, WAHL served as both an independent consultant and an affiliate partner to HomeGain.com, Inc. (hereinafter "HomeGain"), a Delaware corporation with offices in Emeryville, California and that as an independent consultant, WAHL used commercial software to provide services to HomeGain.

9.    Defendants are without information and belief sufficient to enable them to answer the allegations set forth in Paragraph 9 of the Complaint and on that basis deny each and every allegation set forth in Paragraph 9 of the Complaint, except that Defendants admit that the Certificate of Copyright Registration No. VA 1-377-209, a purported copy of which is attached as part of Exhibit A thereto, identifies Bernt R. Wahl as an Author of the work bearing the title "Neighborhood Mapping Layer" to which the registration applies and that some of WAHL's contribution to the neighborhood project he worked on as an independent consultant to HomeGain was based on WAHL's prior knowledge, WAHL's idea of the neighborhood search, and how the neighborhood mapping layer could be structured.

10.    Defendants deny each and every allegation of Paragraph 10 of the Complaint, except that Defendants admit that the information set forth in Paragraph 10 of the Complaint for Copyright Registration No. VA 1-377-209 is some, but not all, of the information included in the Public Copyright Catalog which can be searched through the website of the United States Copyright Office.

11.    Defendants deny each and every allegation of the first two sentences of Paragraph 11 of the Complaint, except that Defendants admit that prior to July 29, 2007, FACTLE entered into a Sales Referral Agreement with HomeGain which, among other things, authorized FACTLE to license and distribute certain HomeGain products and that WAHL licensed and distributed certain HomeGain products through FACTLE.  Defendants

are without information and belief sufficient for them to answer the allegations set forth in the last sentence of Paragraph 11 of the Complaint and on that basis deny each and every allegation set forth in the last sentence of Paragraph 11 of the Complaint.

12.     Defendants are without information and belief sufficient for them to answer the allegations set forth in Paragraph 12 of the Complaint and on that basis deny each and every allegation set forth in Paragraph 12 of the Complaint.

13.     Defendants deny each and every allegation set forth in Paragraph 13 of the Complaint.

14.     Defendants are without information and belief sufficient for them to answer the allegations set forth in Paragraph 14 of the Complaint and on that basis deny each and every allegation set forth in Paragraph 14 of the Complaint, except that Defendants admit that Exhibit A to the Complaint includes documents entitled "Assignment of Copyright" and "Asset Sale Agreement."

15.     Defendants deny each and every allegation set forth in Paragraph 15 of the Complaint, except that Defendants admit that attached as Exhibit B to the Complaint is a letter from Thomas P. Newell, Associate General Counsel of HomeGain to Mr. Bernt Wahl, that Mr. Newell's letter was sent to and received by WAHL on May 30, 2007 which was before the May 31, 2007 effective date of the Asset Sale Agreement that was entered into between HomeGain and Maponics LLC, and that the language in Mr. Newell's letter to WAHL speaks for itself.

16.     Defendants deny each and every allegation set forth in Paragraph 16 of the Complaint.

17.     Defendants deny each and every allegation set forth in Paragraph 17 of the Complaint, except that Defendants admit that attached as Exhibit C to the Complaint is a letter dated October 26, 2007 from Mr. H. Kenneth Merritt, Jr. to Mr. Bernt Wahl d/b/a Factle Map Co. and that the language of Mr. Merritt's letter speaks for itself.

**FIRST CAUSE OF ACTION**

**(Copyright Infringement in Violation of 17 U.S.C. §101 et. seq.)**

18.     Defendants reiterate and incorporate by reference as if fully set forth herein the answers to the allegations of Paragraphs 1 through 17, inclusive.

19.     Defendants deny each and every allegation set forth in Paragraph 19, except that Defendants are without information and belief sufficient for them to answer the allegations concerning the "subject Work" set forth in Paragraph 19 of the Complaint and on that basis deny each and every allegation set forth in Paragraph 19 of the Complaint.

20.     Defendants deny each and every allegation set forth in Paragraph 20 to the extent that "Copyrighted Work alleged herein" as that phrase is used by Plaintiff refers to the work covered by United States Copyright Registration No. VA 1-377-209, except that if "Copyrighted Work alleged herein" refers to something other than the work covered by United States Copyright Registration No. VA 1-377-209, then Defendants are without information and belief sufficient for them to answer the allegations set forth in Paragraph 20 of the Complaint and on that basis deny each and every allegation set forth in Paragraph 20 of the Complaint.

21.     Defendants are without information and belief sufficient for them to answer the allegations set forth in Paragraph 21 of the Complaint and on that basis deny each and every allegation set forth in Paragraph 21 of the Complaint.

22.     To the extent that "Copyrighted Work" refers to the work covered by United States Copyright Registration No. VA 1-377-209, Defendants deny each and every allegation set forth in Paragraph 22, except that Defendants admit that WAHL helped develop and had access to the HomeGain data, but that the data was sold only to Maponics pursuant to the Asset Sale Agreement attached as Exhibit A to the Complaint. To the extent that "Copyrighted Work" refers to something other than the work covered by United States Copyright Registration No. VA 1-377-209, Defendants are without information and belief

sufficient for them to answer the allegations set forth in Paragraph 22 of the Complaint and on that basis deny each and every allegation set forth in Paragraph 22 of the Complaint.

23.    Defendants deny each and every allegation set forth in Paragraph 23 of the Complaint.

24.    Defendants deny each and every allegation set forth in Paragraph 23 of the Complaint.

## SECOND CAUSE OF ACTION

### (Contributory Copyright Infringement)

25.    Defendants reiterate and incorporate by reference as if fully set forth herein the answers to the allegations of Paragraphs 1 through 24, inclusive.

26.    To the extent that any of the allegations set forth in Paragraph 26 of the Complaint apply to Defendants, then Defendants deny each and every such allegation set forth in Paragraph 26 of the Complaint.

27.    Defendants deny each and every allegation set forth in Paragraph 27 of the Complaint.

## THIRD CAUSE OF ACTION

### (Provision of False Copyright Information in Violation of 17 U.S.C. §§1202(a) and (b))

28.    Defendants reiterate and incorporate by reference as if fully set forth herein the answers to the allegations of Paragraphs 1 through 27, inclusive.

29.    Defendants deny each and every allegation set forth in Paragraph 29 of the Complaint.

30.    Defendants deny each and every allegation set forth in Paragraph 30 of the Complaint.

31.    Defendants deny each and every allegation set forth in Paragraph 31 of the Complaint.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## FOURTH CAUSE OF ACTION

### (Unfair Competition)

32.    Defendants reiterate and incorporate by reference as if fully set forth herein the answers to the allegations of Paragraphs 1 through 31, inclusive.

33.    Defendants deny each and every allegation set forth in Paragraph 33 of the Complaint.

34.    Defendants deny each and every allegation set forth in Paragraph 34 of the Complaint.

35.    Defendants deny each and every allegation set forth in Paragraph 35 of the Complaint.

36.    Defendants deny each and every allegation set forth in Paragraph 36 of the Complaint.

37.    Defendants deny each and every allegation set forth in Paragraph 37 of the Complaint.

## FIFTH CAUSE OF ACTION

### (Violation of California Business and Professions Code § 17200 et. seq.)

38.    Defendants reiterate and incorporate by reference as if fully set forth herein the answers to the allegations of Paragraphs 1 through 37, inclusive.

39.    Defendants deny each and every allegation set forth in Paragraph 39 of the Complaint.

40.    Defendants deny each and every allegation set forth in Paragraph 40 of the Complaint.

41.    Defendants deny each and every allegation set forth in Paragraph 41 of the Complaint.

/ /

/ /

1    As and for affirmative defenses to all claims for relief, Answering Defendants allege:

2    ### FIRST AFFIRMATIVE DEFENSE

3    42.    The Complaint, and each purported claim for relief (referred to by Plaintiff as

4    "cause of action") contained therein, fails to state a claim upon which relief can be granted.

5    ### SECOND AFFIRMATIVE DEFENSE

6    43.    By reason of each of the Plaintiff's acts and conduct in the matters which are

7    the subject of the Complaint, some or all of the claims for relief (referred to by Plaintiff as

8    "cause of action") alleged by Plaintiff are barred by the doctrine of unclean hands.

9    ### THIRD AFFIRMATIVE DEFENSE

10    44.    United States Copyright Registration No. VA 1-377-209 is unenforceable

11    against Defendants and each of them as a result of Plaintiff's misuse of the Copyright

12    Registration.

13    ### FOURTH AFFIRMATIVE DEFENSE

14    45.    United States Copyright Registration No. VA 1-377-209 is invalid as a result

15    that there is no originality in the work registered.

16    ### FIFTH AFFIRMATIVE DEFENSE

17    46.    United States Copyright Registration No. VA 1-377-209 is invalid as a result

18    of the failure of the Registrant to disclose to the Copyright Office that there is no originality

19    in the map that it sought to be registered.

20    ### SIXTH AFFIRMATIVE DEFENSE

21    47.    Any use by Defendants of the work to which Plaintiff claims protection under

22    United States Copyright Registration No. VA 1-377-209 is a fair use in that the nature of the

23    registered work was in the public domain prior to the application for registration being filed.

24    //

25    //

26    //

1

## **COUNTERCLAIM OF DEFENDANTS WAHL AND FACTLE**

2    Counterclaimants BERNT WAHL and FACTLE allege as follows:

3    ### **THE PARTIES**

4        48.    At all times material hereto, Counterclaimant BERNT WAHL ("WAHL") is

5    an individual domiciled in the City of Berkeley within the Northern District of California.

6        49.    At all times material hereto, Counterclaimant FACTLE ("FACTLE") is and

7    has been a corporation organized under the laws of the State of California having a principal

8    place of business in the City of Berkeley within the Northern District of California.

9        50.    At all times material hereto, Counter defendant MAPONICS, LLC

10    (hereinafter "MAPONICS") is a limited liability company organized under the laws of the

11    State of Vermont having a principal place of business in the State of Vermont and

12    conducting business within the State of California and in the Northern District of California.

13        51.    At all times material hereto, Counter-defendant DARRIN CLEMENT

14    (hereinafter "CLEMENT") is an individual domiciled in the State of Vermont and on

15    information and belief is a manager of MAPONICS, LLC engaged in business on behalf of

16    MAPONICS in the State of California and in the Northern District of California.

17        52.    Joining CLEMENT as a Counter-defendant and party to this action is

18    necessary pursuant to Rules 19 of the Federal Rules of Civil Procedure as he is a necessary

19    and indispensable party to the Counterclaim.  CLEMENT is the principal tortfeasor to the

20    actions that give rise to the claims for relief alleged by Counterclaimants.  Without

21    CLEMENT being joined as a party to this Counterclaim, complete relief could not be

22    afforded Counterclaimants.  A separate action would have to be brought against CLEMENT

23    resulting in two different courts resolving the same facts and legal claims with a substantial

24    risk of two different outcomes.  Joining CLEMENT as a Counter-defendant to this action

25    will not have any adverse affect on this court's subject matter jurisdiction over the action.

26    As CLEMENT engages in business on behalf of MAPONICS in the State of California and

1  in this district, he is subject to personal jurisdiction in the State of California and in this

2  judicial district.  Joinder of CLEMENT will not render venue improper.

3    53.    At all times mentioned herein, each of the Counter-defendants was an agent,

4  servant, employee, and/or joint venturer of each other, and was at all times acting within the

5  course and scope of such agency, service, employment, and/or joint venture, and each of the

6  Counter-defendants ratified, approved, and authorized the acts of each other with full

7  knowledge of those acts.

8  ## JURISDICTION AND VENUE

9    54.    The claim for declaratory judgment arises from an actual and existing

10  controversy between Counterclaimants WAHL and FACTLE on the one hand and Counter-

11  defendant MAPONICS on the other hand.  The Court has jurisdiction over the claim for

12  declaratory judgment pursuant to Title 28 United States Code sections 2201, 2202, and

13  1338.

14    55.    The Court has supplemental jurisdiction over the state law claims pursuant to

15  Title 28 United States Code section 1367.  The Court also has jurisdiction over the state law

16  claims pursuant to Title 28 United States Code section 1332 because there is diversity of

17  citizenship between Counterclaimants and Counter-defendants and the amount in

18  controversy exceeds $75,000.

19    56.    Venue is proper in this district under Title 28 United States Code section

20  1391(b)(2) in that the events or omissions giving rise to the claims for relief alleged in the

21  Counterclaim occurred in this district.

22  ## FACTS COMMON TO ALL CLAIMS FOR RELIEF

23    57.    WAHL is currently both a Lecturer in the School of Engineering at the

24  University of California, Berkeley where he teaches Entrepreneurship for Engineers and a

25  student in the Masters of Science program for the School of Information at the University of

26  California, Berkeley.  WAHL holds a number of higher education degrees:  Bachelor of Arts

in Mathematics (1984) and Bachelor of Science in Physics (1986) and M.B.A., Business Administration (1999) from University of California, Davis; a Masters in Multimedia (2002) from California State University, Hayward; and an Associate of Arts in Real Estate (2007) from Merritt College in Oakland.

58.    In addition to his degrees, WAHL also holds a Certificate for Travel and Tourism earned in 2007 from Berkeley City College in Berkeley, California and a Certificate for Management of Technology earned in 2007 from the University of California, Berkeley.  WAHL also holds a California State Real Estate Broker License.

59.    WAHL was also a Fulbright Fellow in 2002-2003 where he was a Lecturer at Multimedia University in Malaysia; was awarded the MapWorld Meridian Prize in 2006; and also in 2006 WAHL was a University of California, Berkeley Finalist in the Technology Breakthrough Competition for his work with FACTLE in neighborhood mapping.

60.    WAHL has also written a number of books.  WAHL is a co-author of *The Fractal Explorer*, Copyright 1991; Dynamic Press; and the lead author of *Exploring Fractals on the Macintosh*, Copyright 1994; Addison-Wesley Professional.

61.    During a 2001 trip and in 2002-2003, while lecturing at Multimedia University, WAHL collaborated with others about search technologies that could be used for the creation of accurate neighborhood mapping.  The idea of mapping neighborhoods had been incubating with WAHL since 1995 when he was researching and writing on the subject of fractals.  The work done with others while WAHL was in Malaysia synthesized WAHL's work in neighborhood mapping.

62.    From 2002 through 2004, WAHL worked with a former Multimedia University student of his to develop the notion of accurate mapping of neighborhoods using location based data.  Using Geographic Information System (GIS) data software, WAHL and his team along with the group working in Malaysia were able to create neighborhood maps where the boundaries are defined by electronic GIS data so that the precise longitude

and latitude of a neighborhood boundary can be determined.  In 2004, WAHL formed FACTLE, a company that could provide localized search information market neighborhood maps and other maps (building maps, transit system maps, etc.) for use by companies using location analysis for demographic research, city planning, public health, residential and commercial real estate, internet search, political polling, target marketing, as well as other applications.

63.     In 2005, HomeGain.com, Inc. ("HomeGain"), a real estate information and resource company, sponsored an Intern project based on WAHL's ideas on clustering and mapping neighborhoods at the TIGER (Topologically Integrated Geographic Encoding and Referencing) system quality level.  WAHL led a team of about 15 students to build a neighborhood data set on those ideas.

64.     TIGER system is provided by the United States Census Bureau.  The Census Bureau creates TIGER/Line Files which contain information that describes the points, lines, and areas on Census Bureau maps.  The TIGER/Line Files are extracts of selected geographic and cartographic data from the TIGER system, which is used to support mapping and other geographic activities of the decennial census and sample survey programs.  The TIGER/Line Files provide information on streets, rivers, railroads, and other line features in a form that can be processed by a computer.  The TIGER/Line records contain latitude and longitude coordinates, codes identifying census geographic areas (boundaries), and address ranges and ZIP codes.  While these files contain geographic data, they do not contain image maps, they are vector maps such as streets, census tracks, or city boundaries.  These files are not GIS systems.  Users of TIGER/Line Files must import or reformat the data into an application system or software.  The United States Census Bureau data in the TIGER/Line records also overlaps many of the neighborhood boundary line but their data is focused on census blocks not neighborhoods directly.

65.    At about the same time in 2005, WAHL was collaborating with the group in Malaysia to create GDT (Geographic Data Technology, Inc.) level neighborhood data. GDT, acquired by TeleAtlas, Inc. in 2004, was one of the first, if not the first company, to adapt GIS capabilities to business applications and was a pioneer in the development of cartographic data for business use providing its customers with complete, current, and comprehensive geographic data.  GDT level quality neighborhood mapping is much more comprehensive and at a much higher level than neighborhood mapping done with TIGER.

66.    To create the neighborhood mapping data, the Intern project would locate maps of certain city neighborhoods on the internet.  The TIGER/Line Files would then be used to create a digital boundary of the neighborhood.  This meant tracing with the TIGER/Line File data over the boundaries of neighborhoods located on the neighborhood maps taken from the internet.  Some of the maps used by the Intern project for the HomeGain neighborhood mapping data were based on maps that were already available in GIS format that were directly imported into their collection.  The resultant digital layer containing GIS coordinates for the neighborhood boundaries is a map that looks visually no different than the neighborhood map found on the internet.  The difference is that the Intern project, under WAHL's supervision, was creating a map with GIS coordinates for the neighborhood boundaries.

67.    On information and belief, the neighborhood maps taken from the internet that were used to create the neighborhood mapping done by the Intern project under WAHL's supervision were in the public domain.

68.    HomeGain knew that the higher quality GDT level neighborhood mapping work was underway in Malaysia and it was aware that the Intern neighborhood mapping project it sponsored with WAHL was to create neighborhood maps of TIGER level quality. Nonetheless, the neighborhood mapping done for HomeGain was acceptable to HomeGain.

69.    In 2005, HomeGain began to market licenses to the neighborhood mapping data done by WAHL through the Intern program sponsored by HomeGain.  The first license to the HomeGain neighborhood mapping data was in January 2006.

70.    In March 2007, FACTLE entered into a Sales Referral Agreement with HomeGain where, in consideration of a royalty payment of 50% of the gross revenue obtained from any resale, FACTLE was granted a non-exclusive, non-transferable license within the United States to possess and to distribute the neighborhood mapping data, including the names and boundaries of neighborhoods and sub-neighborhoods as well as their association with their cities and states.

71.    In May 2007, after approximately two years of work in collaboration with the Malaysia group, FACTLE began publicly showing and offering licenses to its GDT quality level neighborhood mapping data set.

72.    On May 30, 2007, WAHL was given notice by HomeGain pursuant to Section 2.1 of the Sales Referral Agreement, that HomeGain was terminating the Sales Referral Agreement effective July 29, 2007.  A copy of this letter is attached as Exhibit B to the Complaint.

73.    In June 2007, the marketing and leads group of HomeGain expressed an interest in licensing the Malaysian Neighborhood Maps and FACTLE's demographic data being used with its recently announced GDT quality level Neighborhood Mapping products.

74.    During July 2007 and prior to July 29, 2007, FACTLE licensed the HomeGain neighborhood data to customers.

75.    On July 11, 2007, WAHL received an email from CLEMENT threatening WAHL and FACTLE with legal action if WAHL did not contact all of FACTLE's prospective customers of neighborhood mapping data to advise those contacts that WAHL never owned the "polygon data" that it was offering and to modify websites and blogs to indicate that WAHL did not own the "polygon data" that is offered by FACTLE and to

provide CLEMENT with a copy of the fully executed Sales Referral Agreement entered into with HomeGain.

76.    On July 17, 2007, WAHL responded to CLEMENT by email advising that the Sales Referral Agreement that FACTLE entered into with HomeGain is believed to contain a confidentiality provision and informs CLEMENT to obtain a copy of the fully executed Sales Referral Agreement directly from HomeGain.

77.    On July 17, 2007, CLEMENT responded to WAHL by email advising him that HomeGain has told CLEMENT that they never signed the Sales Referral Agreement and demands WAHL to provide him with evidence that he has a legitimate right to license the HomeGain neighborhood mapping data, and is acting in compliance with that Agreement.  CLEMENT further demanded that for WAHL to avoid legal action, he must provide CLEMENT with, inter alia, a signed copy of the Agreement, a sworn affidavit that a lifetime license to the HomeGain data is not being offered, and a list of customers of the HomeGain neighborhood mapping data.

78.    On July 18, 2007, WAHL sent an email to CLEMENT acknowledging that HomeGain provided notice that the Sales Referral Agreement would be terminated effective July 29, 2007, providing a copy of this notice letter, and confirming that all licensing of the HomeGain neighborhood mapping data would stop at that time.

79.    On July 18, 2007, CLEMENT sent an email to WAHL advising WAHL that he had no proof that WAHL had any right to commence licensing the HomeGain neighborhood mapping data, he believes that MAPONICS is entitled to compensation for any licenses that WAHL grants or has granted, that the University of California, Berkeley appeared to be involved, and that the next correspondence WAHL would receive would be from CLEMENT's attorneys.

80.    On July 18, 2007, WAHL sent an email back to CLEMENT correctly advising him that the University of California had no connection to the HomeGain

neighborhood mapping data, explained to CLEMENT again that it was based on the prior work of WAHL and others and initially started years earlier, and advised WAHL to consider arbitration of his dispute or to renegotiate his contract with HomeGain if he felt he was or had been treated inequitably.

81.    On information and belief, during the month of July 2007 and prior to July 29, 2007, CLEMENT began telling others, including prospective customers of FACTLE that either FACTLE cannot license the HomeGain neighborhood mapping data or raising doubts as to that fact.

82.    On information and belief, during July 2007 and prior to July 29, 2007, CLEMENT was posting public comments on the internet that raise doubt about FACTLE's ability to license HomeGain neighborhood mapping data.

83.    On information and belief, during July 2007 and prior to July 29, 2007, CLEMENT was posting false statements on the internet as to the origin of the neighborhood mapping data purchased from HomeGain, including a statement on the MAPONICS website saying that the neighborhood mapping data was "created with input from 1000+ resources, including real estate agents in each city" and claiming that Ask.com uses MAPONICS Neighborhoods product when in fact it uses FACTLE created neighborhood mapping data or data licensed from other firms.

84.    In August 2007, FACTLE provided copies of the Neighborhood License contracts for the HomeGain neighborhood mapping data that it had entered into with customers prior to July 29, 2007 to HomeGain along with the royalty payment required under the Sales Referral Agreement.

85.    Since July 29, 2007, neither FACTLE nor WAHL has licensed or sold any neighborhood mapping data.

86.    Since July 29, 2007, neither FACTLE nor WAHL has offered for license or licensed any new licenses to the HomeGain neighborhood mapping data.

87.    The FACTLE neighborhood mapping data that is currently offered and available for licensing by FACTLE is of two types:  (1) neighborhood mapping data at TIGER quality level that is created from scratch without use or reliance on the HomeGain neighborhood mapping data that is uniquely created from data that is obtained from companies and municipalities, some of which is proprietary; and (2) neighborhood mapping data at the GDT quality level that is uniquely created from data that is obtained from companies and municipalities, some of which is proprietary, and which is used to define neighborhood boundaries.

88.    On October 26, 2007, WAHL received a letter from H. Kenneth Merritt, Jr. of the law firm of Merritt & Merritt & Moulton advising FACTLE and WAHL that it had come to their attention that work covered by United States Copyright Registration No. VA 1-377-209 was being marketed and sold by FACTLE.  A copy of this letter is attached as Exhibit C to the Complaint filed in this action.

89.    On January 25, 2008, prior to WAHL and FACTLE being served with the Summons and Complaint in this action, CLEMENT sent an email to Howard Steinberg of Ask.com stating that the neighborhood mapping data used by Ask.com is MAPONICS data and that WAHL "does not deny that it is actually our data and that he has infringed on our copyright."  CLEMENT further told Mr. Steinberg in the email that "you can understand how upset we were when we found that Bernt stole our data."  CLEMENT also told Mr. Steinberg in the email that "I do need to talk to someone there about replacing the Factle Maps copyright with the Maponics copyright.  Who should I talk to about that?"  CLEMENT went on in his email to tell Mr. Steinberg:  "As an aside, our latest release has almost twice as many neighborhoods as the data Bernt provided to you (and we have none of the topological errors his version had).  We are willing to provide you a free upgrade if you like."

90.     On or about February 11, 2008, the Founder and CEO of TourSheet, LLC, a FACTLE licensee of HomeGain neighborhood mapping data, received an email from CLEMENT advising TourSheet to discontinue use of the neighborhood mapping data that it had licensed from FACTLE because "FACTLE stole our [MAPONICS] data."

91.     On February 14, 2008, WAHL sent CLEMENT an email stating the following:

> "Dear Darrin/Maponics:
>
> "Would you kindly correct any false, misleading, ambiguous (without merit) or harmful (without merit) statements said about me, my work, my company (Factle), any of my data suppliers, partners,  about our operation, presented by you or your firm Maponics from posted messages or by any other form of communication be it public or private, immediately as to our ability to source, buy, create, sell, transact in purchase or license location data or that can not be substantiated or are false or misleading in any way.  Your actions are causing harm to both our ability to conduct operations and to my reputation.  Failure to take immediate actions may result in the need for us take action including legal ones if warranted.
>
> "Sincerely,
>
> "Bernt Wahl"

92.     No response to the February 14, 2008 email has been ever been received by WAHL or FACTLE.

93.     On March 27, 2008, WAHL sent CLEMENT another email stating the following:

> "Darrin,
>
> "I just want to clarify, you and your company still have failed to contact and retract to all parties all the untrue comments you have made about me or my company Factle. Also you have failed to have remove[d] all the untrue content you have emailed others or posted about me or my company on the Internet of what we sell and who claims ownership or who is responsible for what work. I ask you to please have it all

removed immediately and inform all parties of the your [sic] retraction of things that are false or misleading about us.

"This is not the first time I have asked you to do this. Do not make false claim about me, Factle or the partner's we work with.

\* \* \* \*

"Sincerely,

"Bernt"

94.    No response to the March 27, 2008 email to CLEMENT has been ever been received by WAHL or FACTLE.

95.    On information and belief, since June 2007, CLEMENT has discredited WAHL, FACTLE, their business and products, and by implication, the Malaysia group by repeatedly telling potential customers of FACTLE products that "FACTLE stole our data," "Bernt stole our data," and by repeatedly claiming credit for neighborhood mapping data created by WAHL and others for HomeGain and by FACTLE and the Malaysia group thereby causing great confusion and unrest in the marketplace over the legitimacy of any FACTLE product.

96.    Since June 2007, FACTLE has lost several prospective customers of neighborhood mapping data directly causing it millions in lost revenue.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

### Against MAPONICS

97.    Counterclaimants reallege and incorporate by reference as if fully set forth herein each and every allegation set forth in Paragraphs 48 through 96, hereinabove.

98.    An actual controversy has arisen and now exists between MAPONICS on the one hand and WAHL and FACTLE on the other hand in that MAPONICS has filed this action against WAHL and FACTLE which includes a claim for infringement of United

1  States Copyright Registration No. VA 1-377-209.  This claim will address the legal rights

2  and duties of these parties for which Counterclaimants desire a declaration of rights.

3       99.    A declaratory judgment that Counterclaimants WAHL and FACTLE have not

4  infringed United States Copyright Registration No. VA 1-377-209 is necessary in that

5  WAHL and FACTLE deny MAPONICS' claims of copyright infringement.

6       100.    A declaratory judgment that United States Copyright Registration No. VA 1-

7  377-209 is unenforceable against Counterclaimants WAHL and FACTLE is necessary in

8  that WAHL and FACTLE contend that the work claimed to be subject to this Registration is

9  from the public domain and any use by Counterclaimants WAHL and FACTLE of material

10  claimed to be subject to this Registration was fair use pursuant to Title 17 United States

11  Code section 107.

12       101.    A declaratory judgment that United States Copyright Registration No. VA 1-

13  377-209 is invalid is necessary in that Counterclaimants WAHL and FACTLE contend that

14  the Registration was procured through a fraud on the Copyright Office as a result of the

15  Registrant's intentional failure to disclose to the Copyright Office that the work sought to be

16  registered was from the public domain, was derivative of other works that were in the public

17  domain or subject to the copyright of another, and/or was a compilation of works that were

18  in the public domain or subject to the copyright of another.

19       102.    As a result of these facts, Counterclaimants WAHL and FACTLE seek a

20  judicial declaration that United States Copyright Registration No. VA 1-377-209 is

21  unenforceable against them and invalid.

22  //

23  //

24  //

25  //

26  //

**SECOND CLAIM FOR RELIEF**

**(Defamation – Libel per se)**

**WAHL Against MAPONICS and CLEMENT**

103.     Counterclaimants reallege and incorporate by reference as if fully set forth herein each and every allegation set forth in Paragraphs 48 through 96, and 98 through 102, hereinabove.

104.     Each of Counter-defendant CLEMENT's statements made to others as set forth hereinabove that WAHL or that FACTLE stole the neighborhood mapping data they license from MAPONICS was false and charged WAHL, not only with dishonesty, but with a crime under California and Federal laws.

105.     Each of Counter-defendant CLEMENT's statements made to others as set forth hereinabove regarding the origin of the neighborhood mapping data obtained from HomeGain, regarding the origin of the neighborhood mapping data licensed by FACTLE and WAHL, and regarding the origin of the neighborhood mapping data used by Ask.com, were all false.

106.     CLEMENT knew or should have known that all of these statements, as set forth in detail hereinabove, were each false.

107.     In making all of these false statements, as set forth in detail hereinabove, CLEMENT acted intentionally, with malice, oppression, and wanton disregard for WAHL.

108.     Each of the false statements made by CLEMENT caused WAHL embarrassment, humiliation, ridicule, and anxiety, and has directly injured WAHL in his business and occupation.

109.     At all times material hereto, MAPONICS was aware of and ratified the conduct of CLEMENT who was acting within the course and scope of his employment when he engaged in the wrongful acts set forth hereinabove.

110.    As a direct and legal result of the conduct of Counter-defendants, WAHL has suffered, and will continue to suffer, past and future economic losses in excess of Six million dollars ($6,000,000), the exact amount being unknown at this time, and will be proven at trial.

111.    As a direct and legal result of the conduct of Counter-defendants, WAHL has suffered, and will continue to suffer, past and future damage to his reputation and goodwill in an amount that is not quantifiable for which WAHL is entitled to injunctive relief prohibiting the Counter-defendants, and each of them, from continuing the conduct alleged herein.

### <u>THIRD CLAIM FOR RELIEF</u>

**(Trade Libel/Product Disparagement)**

**FACTLE Against MAPONICS and CLEMENT**

112.    Counterclaimants reallege and incorporate by reference as if fully set forth herein each and every allegation set forth in Paragraphs 48 through 96, 98 through 102, and 104 through 111, hereinabove.

113.    Each of Counter-defendant CLEMENT's statements made to others as set forth hereinabove that WAHL or that FACTLE stole the neighborhood mapping data they license from MAPONICS was false and charged FACTLE, with criminal activity under California and Federal laws.

114.    Each of Counter-defendant CLEMENT's statements made to others as set forth hereinabove regarding the origin of the neighborhood mapping data from HomeGain, regarding the origin of the neighborhood mapping data licensed by FACTLE and WAHL, and regarding the origin of the neighborhood mapping data used by Ask.com, were false.

115.    CLEMENT knew or should have known that each of these statements, as set forth in detail hereinabove, were false and intentionally made to disparage FACTLE's neighborhood mapping data products.

116.    In making all of these false statements, as set forth in detail hereinabove, CLEMENT acted intentionally, with malice, oppression, and wanton disregard for FACTLE and its products.

117.    Each of the false statements made by CLEMENT has directly injured FACTLE in its trade and business by casting doubt on the integrity and legality of title it had in the products that FACTLE offers the public.

118.    At all times material hereto, MAPONICS was aware of and ratified the conduct of CLEMENT who was acting within the course and scope of his employment when he engaged in the wrongful acts set forth hereinabove.

119.    As a direct and legal result of the conduct of Counter-defendants, FACTLE has suffered, and will continue to suffer, past and future economic losses in excess of Six million dollars ($6,000,000), the exact amount being unknown at this time, and will be proven at trial.

120.    As a direct and legal result of the conduct of Counter-defendants, FACTLE has suffered, and will continue to suffer, past and future damage to its reputation and goodwill in an amount that is not quantifiable for which FACTLE is entitled to injunctive relief prohibiting the Counter-defendants, and each of them, from continuing the conduct alleged herein.

## **FOURTH CLAIM FOR RELIEF**

### **(Interference with Contractual Relations)**

### **Against MAPONICS and CLEMENT**

121.    Counterclaimants reallege and incorporate by reference as if fully set forth herein each and every allegation set forth in Paragraphs 48 through 96, 98 through 102, 104 through 111, and 113 through 120, hereinabove.

122.    At all times relevant hereto, a valid license agreement existed between FACTLE and its customers TourSheet, LLC and Ask.com which granted those customers rights to neighborhood mapping data that they obtained from FACTLE.

123.    Counter-defendants and each of them knew of the license agreement to use neighborhood mapping data purchased from FACTLE.

124.    On information and belief, Counter-defendants and each of them, knew or should have known of the contractual relationships between FACTLE and its customers of licenses to neighborhood mapping data, including the contractual relationships with TourSheet, LLC and Ask.com.

125.    Counter-defendant CLEMENT intentionally engaged in acts and conduct which interfered with FACTLE's rights and obligations under its contractual relationships with TourSheet, LLC and Ask.com which caused FACTLE increased expense, burden, financial hardship, and difficulty thereby adversely affecting FACTLE's contractual relationships with TourSheet, LLC and Ask.com.  CLEMENT's conduct also caused FACTLE and WAHL damage to their reputation, goodwill, and integrity.

126.    In engaging in the tortious interference described herein, CLEMENT acted intentionally, with malice, oppression, and wanton disregard for FACTLE and WAHL.

127.    At all times material hereto, MAPONICS was aware of and ratified the conduct of CLEMENT who was acting within the course and scope of his employment when he engaged in the wrongful acts set forth hereinabove.

128.    As a direct and legal result of the conduct of Counter-defendants, FACTLE and WAHL have suffered, and will continue to suffer, past and future economic losses in excess of One hundred fifty thousand dollars ($150,000), the exact amount being unknown at this time, and will be proven at trial.

129.    As a direct and legal result of the conduct of Counter-defendants, FACTLE and WAHL have suffered, and will continue to suffer, past and future damage to their

1  reputation and goodwill in an amount that is not quantifiable for which Counterclaimants are

2  entitled to injunctive relief prohibiting the Counter-defendants, and each of them, from

3  continuing the conduct alleged herein.

4  ### FIFTH CLAIM FOR RELIEF

5  **(Interference with Prospective Economic Advantage)**

6  **Against MAPONICS and CLEMENT**

7  130.    Counterclaimants reallege and incorporate by reference as if fully set forth

8  herein each and every allegation set forth in Paragraphs 48 through 96, 98 through 102, 104

9  through 111, 113 through 120, and 122 through 129, hereinabove.

10  131.    Until July 29, 2007, Counterclaimants FACTLE and WAHL were able to

11  offer and sell licenses to the HomeGain neighborhood mapping data under a Sales Referral

12  Agreement with HomeGain.

13  132.    Until July 29, 2007, Counterclaimants FACTLE and WAHL were in the

14  process of negotiating deals for the licensing of HomeGain neighborhood mapping data with

15  a number of companies which would have brought future economic benefit to FACTLE and

16  WAHL.

17  133.    Counter-defendants knew or should have known of the relationship of

18  FACTLE and WAHL with their prospective licensees of neighborhood mapping data.

19  134.    CLEMENT's false statements made to the prospective licensees and to others

20  that WAHL and FACTLE stole the neighborhood mapping data they were licensing from

21  MAPONICS, that MAPONICS or that thousands of real estate agents were the originators or

22  creators of the HomeGain neighborhood mapping data were intentional acts on the part of

23  CLEMENT designed to disrupt the relationship of FACTLE and WAHL with their

24  prospective licensees.

25  135.    In engaging in the tortious interference described herein, CLEMENT acted

26  intentionally, with malice, oppression, and wanton disregard for FACTLE and WAHL.

136.    CLEMENT's false statements have interfered with Counterclaimant's prospective business advantage and the relationship that existed between FACTLE and WAHL and their prospective customers was disrupted.

137.    At all times material hereto, MAPONICS was aware of and ratified the conduct of CLEMENT who was acting within the course and scope of his employment when he engaged in the wrongful and disruptive acts set forth hereinabove.

138.    As a direct and legal result of the conduct of Counter-defendants, FACTLE and WAHL have suffered, and will continue to suffer, past and future economic losses in excess of Six million three hundred thousand dollars ($6,300,000), the exact amount being unknown at this time, and will be proven at trial.

139.    As a direct and legal result of the conduct of Counter-defendants, FACTLE and WAHL have suffered, and will continue to suffer, past and future damage to their reputation and goodwill in an amount that is not quantifiable for which Counterclaimants are entitled to injunctive relief prohibiting the Counter-defendants, and each of them, from continuing the conduct alleged herein.

## SIXTH CLAIM FOR RELIEF

**(Unfair Competition - California Business and Professions Code section 17200)**

**Against MAPONICS and CLEMENT**

140.    Counterclaimants reallege and incorporate by reference as if fully set forth herein each and every allegation set forth in Paragraphs 48 through 96, 98 through 102, 104 through 111, 113 through 120, 122 through 129, and 131 through 139, hereinabove.

141.    The acts of Counter-defendants, and each of them, as set forth hereinabove, constitute violations under California Business and Professions Code section 17200 et. seq. in that they are prohibited acts of deception and unfair competition.

142. Counter-defendants, and each of them, have been unjustly enriched as a proximate cause of their unfair business practices and must make full restitution to Counterclaimants pursuant to California Business and Professions Code section 17203.

143. As a direct and legal result of the unfair business practices of Counter-defendants, and each of them, FACTLE and WAHL have suffered, and will continue to suffer, past and future damage to their reputation and goodwill in an amount that is not quantifiable for which Counterclaimants are entitled to injunctive relief prohibiting the Counter-defendants, and each of them, from continuing the conduct alleged herein.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**(Respondeat Superior/Ratification)**

**Against MAPONICS**

144. Counterclaimants reallege and incorporate by reference as if fully set forth herein each and every allegation set forth in Paragraphs 48 through 96, 98 through 102, 104 through 111, 113 through 120, 122 through 129, 131 through 139, and 141 through 143, hereinabove.

145. At all times mentioned herein, each of the Counter-defendants was an agent, servant, employee, and/or joint venturer of each other, and was at all times acting within the course and scope of such agency, service, employment, and/or joint venture, and each of the Counter-defendants ratified, approved, and authorized the acts of each other with full knowledge of those acts.

146. Counter-defendant CLEMENT was acting within the scope of his employment with MAPONICS when he made the false and malicious statements as set forth in detail hereinabove.

147. Counter-defendant MAPONICS was aware of CLEMENT's wrongful acts and acted in a manner so as to ratify and embrace CLEMENT's wrongful conduct as its own.

148.    As a direct and legal result of the relationship between MAPONICS and CLEMENT and the ratification of CLEMENT's conduct by MAPONICS, MAPONICS should be held liable to Counterclaimants for each of the wrongs committed by CLEMENT.

## **PRAYER**

WHEREFORE, Answering Defendants and Counterclaimants WAHL and FACTLE pray for judgment as follows:

1.    That Plaintiff and Counter-defendant MAPONICS take nothing by reason of its Complaint and that judgment be rendered in favor of Defendants and Counterclaimants WAHL and FACTLE on each of claims brought by Plaintiff and Counter-defendant MAPONICS;

2.    A declaration that United States Copyright Registration No. VA 1-377-209 has not been infringed by either Defendants and Counterclaimants WAHL or FACTLE;

3.    A declaration that United States Copyright Registration No. VA 1-377-209 is unenforceable against Defendants and Counterclaimants WAHL or FACTLE and that United States Copyright Registration No. VA 1-377-209 is invalid;

4.    That judgment be entered in favor of Defendants and Counterclaimants WAHL and FACTLE and against Plaintiff and Counter-defendants MAPONICS and CLEMENT on each of their claims for relief alleged in the Counterclaim;

5.    That a preliminary and permanent injunction be entered against Plaintiff and Counter-defendants MAPONICS and CLEMENT, their agents, employees, representatives, and all other persons acting in concert or privity with them prohibiting their continued tortious acts and acts of unfair competition;

6.    That a monetary award be entered as damages in favor of Defendants and Counterclaimants WAHL and FACTLE against Plaintiff and Counter-defendants MAPONICS and CLEMENT jointly and severally in an amount to be proven at trial;

7.     That an award of exemplary damages be entered in favor of Defendants and Counterclaimants WAHL and FACTLE against Plaintiff and Counter-defendants MAPONICS and CLEMENT jointly and severally in an amount to be determined at trial;

8.     That an Order be entered requiring Plaintiff and Counter-defendants MAPONICS and CLEMENT make full restitution to Defendants and Counterclaimants WAHL and FACTLE for violations of California Business and Professions Code section 17200, pursuant to section 17203 thereof.

9.     That Defendants and Counterclaimants WAHL and FACTLE be entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action pursuant to Title 17 U.S.C. section 505 and pursuant to California law;

10.     That an award of prejudgment interest be entered in favor of Defendants and Counterclaimants WAHL and FACTLE against Plaintiff and Counter-defendants MAPONICS and CLEMENT from the date of each wrongful act committed by Plaintiff and Counter-defendants MAPONICS and CLEMENT;

11.     That an award of post-judgment interest as allowed by law be entered in favor of Defendants and Counterclaimants WAHL and FACTLE against Plaintiff and Counter-defendants MAPONICS and CLEMENT; and

12.     For such other and further relief as the Court deems reasonable and proper.

Respectfully submitted,

Dated this 31st day of March, 2008.          By:_____/s/ Mark L. Pettinari_____
                                                    Mark L. Pettinari

*Attorneys for Defendants and*
*Counterclaimants Bernt Wahl and Factle*

1

## **JURY TRIAL DEMAND**

2

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 3-6,

3

Defendants and Counterclaimants demand a jury trial of all issues triable to a jury.

4

Respectfully submitted,

5

6

Dated this 31st day of March, 2008.        By:_____/s/ Mark L. Pettinari_____
                                                        Mark L. Pettinari

7

8

*Attorneys for Defendants and*
*Counterclaimants Bernt Wahl and Factle*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26