1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

George Frost (CA Bar # 158728)
Law Offices of George Frost
2930 Magnolia Street
Berkeley, CA 94705
Telephone: (510) 647-8863
Facsimile: (510)_295-2562
  geofrost@comcast.net

Alexander Volchegursky (CA Bar # 209172)
235 Montgomery Street, Suite 600
San Francisco, CA 94104
Telephone: (415) 986-4000
Facsimile: (415) 986-4001

Attorneys for Plaintiff
Maponics, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAPONICS, LLC, a Vermont limited liability company,<br><br>Plaintiff,<br>vs.<br><br>BERNT WAHL, an individual; FACTLE, a California Corporation, and DOES 1-20, inclusive<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No.: Case No.: C07-05777<br><br>**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE COUNTERCLAIMS PURSUANT TO FED. RULES CIV. PROC. §§ 12(b)(2) AND 12(b)(6)**<br><br>**DATE:** July 16, 2008<br>**TIME:** 10:00 a.m.<br>**JUDGE**: Hon. Bernard Zimmerman |

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on July 16, 2008 at 10:00 a.m. or as soon thereafter as this matter may be heard in the above entitled court, located at 450 Golden Gate Ave., San Francisco, California, in the courtroom of the Hon. Bernard Zimmerman, Counterdefendants Maponics LLC ("Maponics"), a Vermont limited liability company, and Darrin Clement ("Clement"), an individual, will and hereby does move this Court, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, to

1    dismiss the Counterclaims of Bernt Wahl ("Wahl") and Factle, a California corporation ("Factle,"

2    collectively with Wahl, the "Counterclaimants").

3        The grounds for this motion are that this Court lacks personal jurisdiction over Clement, a

4    resident of Vermont, and that the Counterclaims fail to state a claim upon which relief can be granted.

5    Specifically, all of Counterclaimants' tort-based claims, and the derivative California UCL claim, against

6    both Clement and Maponics fail because Counterclaimants has not alleged that either engaged in any

7    conduct that was actionable, and the alleged conduct is absolutely privileged.

8    **I.    INTRODUCTION AND SUMMARY OF ALLEGATIONS**.

9        Counterclaimants' tort allegations against Maponics and its manager, Clement, are a rather

10   obvious game of "turnabout" intended to gain litigation advantage, or at least attempt to even the paying

11   field.  But in this instance, the law does not support a level playing field, and Factle's turnabout is *foul*

12   *play*.  These claims have no merit and should be dismissed.

13       Maponics and Clement offer the following summary of the procedural history and allegations to

14   date.

15       **A.    Procedural Background.**

16       Maponics filed an action November 14, 2007 alleging copyright infringement, contributory

17   infringement, removal or alteration of copyright management information under Section 1202(A) and (B),

18   unfair competition, and violations of California's unfair competition law, seeking damages, permanent

19   injunction and other relief against Wahl and Factle, a corporation with which Wahl is associated.

20   Maponics retained a professional process server and, after several attempts, promptly served the

21   Counterclaimants at the address provided to the California Secretary of State.

22       On January 23, 2008, having heard no response whatsoever, Maponics filed Certificates of

23   Service and then proceeded to file a Motion for Entry of Default against Counterclaimants.  The Clerk's

24   Notice of Entry of Default was filed Jan 31, 2008.

**MOTION FOR DISMISSAL UNDER**                                    **C07-05777**
**FRCP RULES 12(b)(2) AND 12(b)(6)**

During this period, Maponics, acting through Clement, sent several cease and desist emails to potential infringers of Maponics' copyrighted materials, and also advised of the status of litigation against these Counterclaimants.

On February 12, 2008, acting pro se, Wahl filed a confused pleading styled "Relief From Claims & Asserted Damages of Copyright Infringement; Removal or Alteration of Copyright Management Information." This pleading included, among other things, a copy of a bizarre License Agreement, entered into by "Factle Co." to "Factle Maps" purportedly giving the latter a 23-year license to use and distribute the Work in question. Maponics had largely prepared a response to this pleading when, on February 21, 2008, Wahl made another filing, also seeking "relief" from claims -- yet also including a Prayer that appeared to state various counterclaims, albeit defectively, against Maponics.[1]

At the court's request, after preparing a FRCP Rule 12(b)(6) response to this pleading, Maponics agreed to treat this pleading as a motion for relief from entry of default, and then stipulated to that relief.

In response to the Complaint, Counterclaimants (now represented by counsel) filed Counterclaims against Maponics, and individually named as a defendant Clement.

This Motion to Dismiss under FRCP 12(b)(2) and 12(b)(6) follows.

**B.**    **Summary of Maponics' Allegations.**

The Complaint alleges damage to Maponics' business by the Counterclaimants' unauthorized distribution, marketing and sale, lease or licensing or perpetually licensing of products derived from and/or containing parts of its copyrighted mapping database, called the "Neighborhood Mapping Layer" (the "Copyrighted Work, or the "Work"). The Work is protected by copyright registration VA 1-377-209 (the "Registration"), which was assigned to Maponics as part of an asset acquisition as of May 31, 2007.[2]

---

[1] In these pleadings, Wahl claims that a stalker mysteriously interfered with service of the Complaint upon him.

[2] This background is provided for context only. In assessing Maponics' Motion to Dismiss, all factual allegations in Wahl's pleading should be accepted as true, and all reasonable inferences must be drawn in Wahl's favor.

Maponics regards this action as a relatively straightforward case of infringement. Most simply put: Wahl worked as a software engineer for a company called HomeGain, which provides computer mapping services. As a HomeGain contractor, Wahl helped create and was a coauthor of the Work. According to the Registration, Wahl assigned his rights in the Work to HomeGain, which in turn made an asset sale to Maponics that included all rights to the Work.

Wahl at one time may have had a license to sell certain products based on the Work. Wahl claims he had such a license. However, no executed license has ever been produced either by HomeGain or Wahl. The Counterclaimants admit that any license that did in fact exist was terminated as of July 29, 2007, expressly revoking Factle's right to "…redistribute the Licensed Materials [the Work] thereafter…". *See* Counterclaims at ¶ 72.

Most significantly, Wahl and Factle have now admitted through informal discovery that following July 29, 2007, he and/or Factle ***continued to distribute a "corrected" version of the very same mapping product*** (the only difference consisting in that Wahl says he ran the HomeGain mapping data through a "filter" to correct "errors") to current customers, and did so in competition with Maponics, thus lessening the Work's value for Maponics in the market. *See* attached Request for Judicial Notice at ¶ 1 and Exhibit A thereto. Maponics believes it will prevail on summary judgment as to infringement and will aggressively pursue a resolution of this case short of trial.

## C.    Summary of Counterclaimants' Allegations.

The Counterclaimants' claims against Maponics and Clement allege declaratory judgment, defamation, trade libel, interference with contractual relations and prospective economic advantage, and unfair competition under California Business & Professions Code § 17200 et seq.

All of the tort claims, as well as the derivative §17200 claim, are based on the same set of operative facts, namely: a single alleged internet posting on the Maponics website during July 2007 (*see* ¶ 83 of Counterclaims) and two (perhaps three) sets of email communications between Clement and website managers, including those at IAC and its subsidiary, Ask.com, (*see* ¶ 83 of Counterclaims) and

**MOTION FOR DISMISSAL UNDER**
**FRCP RULES 12(b)(2) AND 12(b)(6)**

**C07-05777**

Toursheet.com (*see* ¶90 of Counterclaims). (The remaining boilerplate allegations of defamation are insufficient as a matter of law to state a cause of action and should be stricken. *See* III(A) below.)

Specifically, Counterclaimants allege that Maponics, through Clement, tortiously injured them as follows:

First, Counterclaimants allege -- on information and belief only -- that "during July 2007 and prior to July 29, 2007," a blog posting on Maponics' website claimed the mapping product was "created with input from 1000+ sources" and that the Ask.com site uses Maponics' product "when in fact" it used "Factle-created neighborhood mapping data." This garbled, compound, and vague allegation, made only on information and belief, should be stricken as it is insufficient as a matter of law to establish liability. *See* § III(A) below.

Second, Counterclaimants cite an email exchange with Ask.com's Howard Steinberg initiated on January 25, 2008 (*see* ¶ 89 of Counterclaims). A true and correct copy of the entire email exchange, and the others cited in the Counterclaims, are attached to the Declaration of Darrin Clement ("Clement Decl.") at ¶¶ 5-6, <u>Exhibits A and B</u> thereto. The emails are provided for the court's convenience in determining the personal jurisdiction issue relating to Clement, which turns on the nature and extent of his "contacts" with the forum. It is therefore appropriate to provide factual detail that may not be appropriate for a straight 12(b)(6) motion.

Third, Counterclaimants further specifically allege that Maponics, through Clement, on February 11, 2008, tortiously injured them in an email exchange with a manager of Toursheet.com (*see* ¶ 90 of Countercomplaint). *See* Clement Decl. at ¶ 5-6 and <u>Exhibits A and B</u> thereto.

Finally, Counterclaimants allege on information and belief at ¶ 95 of their Counterclaims that Maponics, through Clement, "repeatedly" made statements from June 2007 forward that Wahl or Factle "stole our data." This allegation also is defective for lack of requisite particularity and should be stricken. *See* § III(A) below.

The court should take note that *all* of the emails cited with particularity in the Counterclaims were sent after the filing of this lawsuit against Wahl, and even after Maponics filed for a default judgment.

**MOTION FOR DISMISSAL UNDER**
**FRCP RULES 12(b)(2) AND 12(b)(6)**

**C07-05777**

1   These communications are absolutely privileged and not actionable.  *See* § III(A) below.  There are no

2   other communications cited with the requisite specificity to support these tort claims.

3   **II.    COUNTERCLAIMANTS' CLAIMS AGAINST CLEMENT MUST BE DISMISSED FOR**
        **LACK OF PERSONAL JURISDICTION.**

4

5           It is well settled that a district court's power to exercise personal jurisdiction over a

6   nonresident individual is not unconditional.  *See, e.g.*, *Asahi Metal Indus Co. v. Superior Court*, 480 U.S.

7   102, 113 (1987).  Indeed, a court's power is strictly circumscribed by the Due Process Clause of the

8   United States Constitution, which requires as a matter of individual liberty that nonresidents have certain

9   minimum contacts with the forum state before personal jurisdiction may be exercised.[3]  *See Go-Video,*

10  *Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1415 (9th Cir. 1989).

11          More specifically, a nonresident's contacts with the forum must give rise to a relationship such

12  that continued maintenance of the suit there "does not offend traditional notions of fair play and

13  substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *LeDuc v. Ky. Cent. Life Ins.*

14  *Co.*, 814 F. Supp. 820, 824 (N.D. Cal. 1992).  Given this requirement of meaningful contact between the

15  defendant and the forum, only two bases for asserting personal jurisdiction over nonresidents have been

16  recognized.[4]  *See Yahoo! Inc.* v. *La Ligue Contre Le Racisme Et L'antisemitisme,* 433 F.3d at 1199 (9th

17  Cir. 2006).

18

19

20

21  _____

    [3]  In most cases, a court's power is also limited by the forum state's long arm statute.  *See, e.g.*, *Sher v. Johnson*, 911
22  F.2d 1357, 1360 (9th Cir. 1990).  California's statute, however, indicates that a court's power to exercise personal
    jurisdiction over a nonresident is coextensive with that of the Constitution.  *See* Cal. Civ. Proc. Code § 410.10 (West
23  2006).  Accordingly, this court's sole inquiry is whether the assertion of personal jurisdiction over Clement
    comports with federal due process requirements.  *See, e.g.*, *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320
24  (9th Cir. 1998).

25  [4]  The Ninth Circuit does recognize some of the "traditional bases" of exercising personal
26  jurisdiction – *i.e.* domicile, presence, and consent.  *See, e.g.*, *Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1104 n.3
    (C.D. Cal. 2001).  None of these bases, however, apply in this case.  First, Clement is not domiciled in the state of
27  California; he resides in Vermont  and intends to remain there indefinitely.  *See* Clement Decl., ¶¶ 2 and 7.  Second,
    Clement was not served while "present" in the forum.  (Clement Decl. ¶ 12).  Third, Clement has not met any of the
28  standard tests for consent, including a voluntary appearance in the action, contractual consent, or designation *Inc. v.*
    *La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2005); *Concat LP v. Unilever*, 350
    F. Supp. 2d 796, 810 (N.D. Cal. 2004).

                                                     6

First, a court may exercise "general" jurisdiction over a nonresident defendant, no matter what the cause of action, if the defendant has had substantial, continuous, and systematic contact with the forum. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarian Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) [hereinafter "*Glencore Grain*"].

Second, a court may exercise "specific" or "limited" jurisdiction. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127 (9th Cir. 1995). Specific jurisdiction allows a court to exercise its power over a nonresident who has had only minimal contacts with the forum, but *only* as to those causes of action which arise directly from the applicable forum-related contacts. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-02 (9th Cir. 2004).

As to either basis, it is the plaintiff who bears the burden of establishing that jurisdiction is proper and that the basic fairness requirements of our Constitution are being observed. *See AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). In satisfying this burden, the plaintiff may not rely on mere conclusory allegations that general or specific jurisdiction simply exists. *See Amba Mktg. Sys. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Instead, the plaintiff must come forward with specific facts, by affidavit or otherwise, that support jurisdiction. *E.g. Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986); *Newport Components, Inc. v. NEC Home Elecs., Inc.*, 671 F. Supp. 1525, 1530 (C.D. Cal. 1989). Failure to do so calls for an immediate dismissal. *See Schwarzenegger*, 374 F.3d at 800, 807. In this case, Counterclaimants have not come forward with facts which show that either basis for exercising personal jurisdiction is proper and, as such, Counterclaimants' claims against Clement should be dismissed.

### A.    Clement's Individual Contacts With the Forum State Are Not Sufficient to Establish General Jurisdiction.

The level of contact an individual defendant must have with the forum to justify a court's exercise of general jurisdiction is significant. *See Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *see also Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-18 (1984) [hereinafter "*Helicopteros*"]. In fact, the relevant contacts must be so continuous

1    and systematic that one may actually equate the defendant with being physically present in the forum.

2    *E.g. Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006); *CFA N. Cal. Inc. v. CRT*

3    *Partners, LLP*, 378 F. Supp. 2d 1177, 1183 (N.D. Cal. 2005).  The need for such an exacting standard is

4    simple:  once a defendant is found subject to general jurisdiction, he or she may "be haled into court in

5    the forum state to answer for any . . . activit[y] anywhere in the world."  *See Schwarzenegger*, 374 F.3d at

6    801.

7            To subject an individual to such an onerous burden, on anything less than "approximate

8    presence," would clearly violate our traditional notions of fair play and substantial justice.  *See, e.g.*,

9    *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1544 (10th Cir. 1996).  Accordingly,

10    general jurisdiction is – as it should be – a rarely asserted basis for exercising personal jurisdiction over

11    nonresidents.  *See, e.g.*, *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir.

12    1993) (noting that as of 1993, the Supreme Court had upheld a finding of general jurisdiction only once,

13    in a case with significant and pervasive contacts with the forum).

14

15            The *Trierweiler* decision is particularly instructive here.  In that case, the nonresident

16    defendant (1) previously lived in the forum for a four year period; (2) continued to travel to the

17    forum even after leaving; and (3) was currently conducting business in the forum, including

18    providing business advice as a member of the advisory board of a holding company located within the

19    forum.  90 F.3d at 1543.  Together, plaintiff argued, these contacts were sufficient to imbue the district

20    court with general jurisdiction over the nonresident.  *Id.*  The Tenth Circuit disagreed, finding that an

21    extraordinary relationship with the forum was needed before general jurisdiction could be exercised.  *Id.*

22    at 1543.

23

24            This is particularly true, the court stated, for individuals, where the standard for imposing general

25    jurisdiction is "demanding."  *Id.* at 1544.  Given this high threshold, the court held that even these

26    contacts "did not rise to the continuous and systematic level necessary to confer general jurisdiction."  *Id.*

27            Clement never lived in California, has not traveled to the forum in four years, and has never

28    conducted business in this forum as an individual.  *See* Clement Decl. at ¶¶ 2-3.

8

1    Together, or separate, these individual contacts do not "rise to the continuous and systematic

2  level necessary to confer general jurisdiction." *Trierweiler*, 90 F.3d at 1544; *see also Panavision*, 141

3  F.3d at 1320 ("General jurisdiction exists when a defendant *is* domiciled in the forum state.") (emphasis

4  added); *Helicopteros*, 466 U.S. at 417 (finding no general jurisdiction despite numerous business trips to

5  the forum state over a number of years); *LeDuc*, 814 F. Supp. at 824 (finding that defendant's prior

6  occasional business trips to the forum were not sufficient to establish general jurisdiction); *Gates Learjet*

7  *Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) ("Making telephone calls and sending telexes and

8  letters to [the forum] are not activities which support a finding of general jurisdiction."). To hold

9  otherwise would be to ignore the more exacting standard needed for a finding of general jurisdiction in

10  the case of an individual and the absolute constitutional maxim that substantial justice be observed

11  throughout the jurisdictional process. *See, e.g.*, *Schwarzenegger*, 374 F.3d at 801 (finding that district

12  court was correct in not asserting general jurisdiction over individual defendant because to do so would

13  not comport with due process). Thus, Clement is not subject to general jurisdiction in California.

14

15    Moreover, even if this Court were to find that Clement's contacts with California rose to the level

16  of being continuous and systematic, jurisdiction would still need to be *reasonable*. *Amoco Egypt Oil Co.*,

17  1 F.3d at 851 n.2. Counterclaimants cannot satisfy this requirement.

18

19    **B.    The Contacts Clement Allegedly Had with California Cannot Support a Finding of Specific Jurisdiction.**

20    As is true of general jurisdiction, specific jurisdiction may only be exercised over those

21  nonresidents who have established some meaningful connection with the forum state. *See, e.g.*,

22  *Burger King Corp. v. Rudzweicz*, 471 U.S. 462, 475 (1985); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220,

23  223 (1957). In fact, in the case of specific jurisdiction, a substantial connection must exist between the

24  defendant, the forum, and the litigation. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984);

25  *Yahoo! Inc.*, 433 F.3d at 1205. Only when a substantial relationship exists between all three elements can

26  a court conclude that the defendant could have reasonably

27  anticipated being haled into court in the forum state – the absolute hallmark of due process. *See*,

28

**MOTION FOR DISMISSAL UNDER**                                                                 **C07-05777**
**FRCP RULES 12(b)(2) AND 12(b)(6)**

1    *e.g., World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Core-Vent Corp. v.*

2    *Nobel Indus.*, 11 F.3d 1482, 1485 (9th Cir. 1993).

3         The Ninth Circuit relies on a three-part test for assessing specific jurisdiction.  *Caruth*, 59

4    F.3d at 127.  Under this test, specific jurisdiction exists only when: (1) the defendant has performed some

5    meaningful act or acts within the forum by which he purposefully avails himself of the privileges of

6    conducting activities there; (2) the plaintiff's claims for relief arise out of or result directly from the

7    defendant's forum-related contacts; and (3) the exercise of jurisdiction is

8    reasonable.  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *Forsythe v.*

9    *Overmyer*, 576 F.2d 779, 782 (9th Cir. 1978); *LeDuc*, 814 F. Supp. 820, 824.  If any of these

10   elements do not exist, specific jurisdiction may not be exercised.  *Core-Vent Corp.*, 11 F.3d at 1491

11   (exercise of specific jurisdiction not proper because it would be unreasonable); *Callaway Golf Corp. v.*

12   *Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1199-1204 (C.D. Cal. 2000) (no specific jurisdiction

13   because defendant had not committed any meaningful act within the forum and claims did not arise from

14   defendant's contacts); *Chandler v. Roy*, 985 F. Supp. 1205, 1212-13 (D. Ariz. 1997) (no purposeful

15   availment).

16        Here, Counterclaimants appear to assume that specific jurisdiction is proper based upon *a single*

17   *internet posting and a handful of email contacts* Clement had with potential infringers of Maponics'

18   intellectual property, notifying them pursuant to the requirements of the Digital Milenium Copyright Act

19   of the potential infringement, and more generally, of the existence of a lawsuit against Wahl and his

20   company, and specifically of the fact that the Counterclaimants had defaulted in the litigation and this

21   default had been entered.  *See* Clement Decl. at ¶ 8.

22        This record of contacts, however, falls far short of satisfying any portion of the Ninth Circuit's

23   well-established test for specific jurisdiction.

24        **1.    Clement did not purposefully avail himself of the privileges of conducting**
            **activities within the forum state.**

25   The intent of the "purposeful availment" prong is to establish that the defendant himself

**MOTION FOR DISMISSAL UNDER**                                                      **C07-05777**
**FRCP RULES 12(b)(2) AND 12(b)(6)**

1   deliberately created some meaningful connection with the forum state.  *Burger King Corp.*, 471

2   U.S. at 475; *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988).  Due process will

3   simply not permit the exercise of jurisdiction over a nonresident whose only contacts with the forum are

4   "random, fortuitous, or attenuated" or initiated entirely by the plaintiff or some third party.  *See, e.g.*,

5   *Panavision Int'l, L.P.*, 141 F.3d at 1320; *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834,

6   840 (9th Cir. 1986).

7           To satisfy this requirement in intentional tort cases – such as the one here – the plaintiff must

8   prove that the nonresident "purposefully directed" some allegedly unlawful conduct at the forum state.

9   *Schwarzenegger*, 374 F.3d at 802-03.  Stated more succinctly, the plaintiff must show that *the defendant*:

10  (1) committed an intentional act, (2) expressly aimed at the forum (3) which caused harm in the forum

11  state.  *Yahoo! Inc.,* 433 F.3d at 1206; *Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d

12  1135, 1140-41 (N.D. Cal. 2005); *Davis v. American Family Mutual Insurance Company*, 861 F.2d 1159,

13  1162-63 (9th Cir. 1988).  If any one of these three elements is missing, then purposeful availment may not

14  be found and specific jurisdiction may not be proper.  *See Schwarzenegger*, 374 F.3d at 805.

15          Counterclaimants appear to suggest that an assertion of specific jurisdiction is proper based on a

16  single internet posting and a handful of cease and desist emails from Clement to firms other than the

17  Counterclaimants in California.  *See* Counterclaims at ¶¶ 82-83, 89-90.  This communication, however,

18  cannot satisfy the "purposeful direction" requirement because, at the very least, the call was not

19  "expressly aimed at" the forum state.

20          Counterclaimants cannot allege and prove that the purported communication evidenced a

21  deliberate act on the part of Clement to reach into the forum and target the Counterclaimants with

22  intentionally wrongful conduct.  *Davis*, 861 F.2d at 1162; *see also Dole Food Co.*, 303 F.3d at 1111.

23          To the contrary, Clement did not direct the communications to a California resident but via

24  internet communications – one posting and two or three email threads – to the corporate managers of

25  internet websites that had apparently posted infringing copies of Maponics mapping software on their

26  sites.  At the time he sent these emails, Clement had no idea where two of the corporations were

11

1  headquartered.  *See* Clement Decl. at ¶ 7.  He knew one of them (IAC, parent of Ask.com) was based in

2  New York.

3       The gist of the communications was to alert the firms of possible infringement, as is required

4  under copyright practice and the Digital Millenium Copyright Act, and in order to ameliorate potential

5  damages resulting from the infringement.  *See* Clement Decl. at ¶ 8.  For the court's convenience in

6  determining the personal jurisdiction aspects of this brief, which will turn on the quality and frequency of

7  the contacts themselves, copies of each of the email communications alleged in the Counterclaims are

8  affixed to the Clement Decl.

9       Clements made these cease and desist communications not as an individual, but only in and

10  through the performance of his duty as an officer of Maponics.  *See* Clement Decl. at ¶¶ 4-5.  Clement

11  had, and continues to have, direct responsibility for protecting the intellectual property of Maponics that

12  was acquired from HomeGain, and responsibility for managing the lawsuit against the defendants.  *See*

13  Clement Decl. at ¶ 4.

14       This meant he was duty-bound to alert potential infringers to cease and desist.   He also was well

15  within his rights to communicate the existence and status of this lawsuit filed in the Northern District of

16  California without incurring the risk of being personally haled into court here.  As such, these

17  communications were absolutely privileged, and cannot be a basis for personal jurisdiction.[5]  *See* § III(A)

18  below.

19       Counterclaimants would also have difficulty satisfying the other two elements of the Ninth

20  Circuit's purposeful direction test.  For instance, the fact that Counterclaimants' business operations are

21  now primarily located in Malaysia (Counterclaims at  ¶ 71, 73 et seq.) makes it questionable whether it

22  suffered a "jurisdictionally sufficient amount of harm" in California.  *See Yahoo! Inc.*, 433 F.3d at 1207.

23  Moreover, Wahl continues to hide behind a post office box and, at the time he asked the court to lift the

24  default judgment against him, claimed that the only address listed for Factle and himself personally had

---

[5]  This absolute privilege accorded such communications, along with the lack of intentionality in Clement's contacts with the forum, are among the factors distinguishing this case from *Calder v. Jones*, 465 U.S.783 (1984).

1    been taken over by a mysterious "stalker" living at the address.

2         Such communication cannot satisfy the "expressly aimed at" requirement.  *Davis*, 861 F.2d 1162;

3    *Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1247 (9th Cir. 1984).

4         Consequently, this court should conclude that Clement did not purposefully direct his conduct

5    towards California and therefore any assertion of specific jurisdiction would be improper.

6              **2.    This Court's exercise of personal jurisdiction over Clement would be
7                     unreasonable.**

8         The Ninth Circuit's "reasonableness" requirement is meant to give effect to the

9    Constitution's clear mandate that no assertion of personal jurisdiction may ever violate our

10   traditional notions of fair play and substantial justice.  *See, e.g.*, *Ochoa v. J.B. Martin & Sons*

11   *Farms*, 287 F.3d 1182, 1192 (9th Cir. 2002); *Callaway Golf Corp.*, 125 F. Supp. 2d at 1204.  This is true

12   regardless of whether the plaintiff has successfully shown that a nonresident has substantial contacts with

13   the forum and that his or her claims arise from those contacts.  *E.g. U.S. Vestor, LLC v. Biodata Info.*

14   *Tech. AG*, 290 F. Supp. 2d 1057, 1066 (N.D. Cal. 2003).  That our "jurisdictional rules [are] not

15   employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly

16   is at a 'severe disadvantage,'" is simply too important to ignore, no matter what the defendant's contacts

17   with the forum may be.  *Core-Vent Corp.*, 11 F.3d at 1487 (quoting *Burger King Corp.*, 471 U.S. at 478).

18   Accordingly, if a court's exercise of personal jurisdiction would not be reasonable, a court may not force

19   a litigant to submit to its power under any circumstance.  *See, e.g.*, *Brand v. Menlove Dodge*, 796 F.2d

20   1070, 1073-76 (9th Cir. 1986).

21        To assess the reasonableness of exercising specific jurisdiction over a nonresident, the Ninth

22   Circuit has identified seven factors, including: (1) the extent of the defendant's purposeful

23   interjection into the forum; (2) the burden on the defendant of litigating in the forum; (3) the extent of

24   conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the

25   dispute; (5) the most efficient resolution of the controversy; (6) the importance of the forum to the

26   plaintiff's interest; and (7) the existence of an alternative forum.  *Dole Food Co.*, 303 F.3d at 1114; *CFA*

**MOTION FOR DISMISSAL UNDER**                                                    **C07-05777**
**FRCP RULES 12(b)(2) AND 12(b)(6)**

1  *N. Cal. Inc.*, 378 F. Supp. 2d at 1184. Each of these factors is generally assessed separately and none are

2  dispositive. *See, e.g.*, *Panavision Int'l L.P.*, 141 F.3d at 1323. Instead, the totality of all the factors is

3  considered. *Ziegler v. Indian River County*, 64 F.3d 470, 475 (9th Cir. 1995); *Brayton Purcell LLP*, 361

4  F. Supp. 2d at 1143. Thus, even if some of the factors weigh in favor of jurisdiction, or appear neutral, if

5  the balance argue against reasonableness, specific jurisdiction would not be proper. *Core-Vent Corp.*, 11

6  F.3d at 1488-91.

7       As applied here, the totality of all the factors argue against a finding of reasonableness.

8  Specifically, five of the outlined of the factors clearly point towards a finding of unreasonableness, while

9  the remaining two appear neutral. As such, to comport with the requirements of Due Process, this Court

10  must decline to exercise personal jurisdiction over Clement.

11                          **a.      Extent of the defendant's interjection.**

12       The extent of a nonresident's purposeful interjections into the forum has a direct impact on the

13  fairness of subjecting him to personal jurisdiction. *Data Disc, Inc. v. Systems Tech. Assocs.*, 557 F.2d

14  1280, 1288 (9th Cir. 1977). This is because the more interjection a defendant has into the forum, the

15  more likely he will reasonably anticipate being haled into court there. *See Core-Vent Corp.*, 11 F.3d at

16  1488. Conversely, when a defendant has little or no interjection into the forum, one cannot expect him to

17  anticipate having to defend himself there and thus jurisdiction would be more unreasonable. *Ins. Co. of*

18  *N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981).

19       Here, Clement's alleged individual contacts with the forum consists of sending a handful of

20  emails to the corporate managers of two web sites, Toursheet.com, and Ask.com, notifying them that they

21  were potentially infringing upon the copyrighted mapping material belonging to his employer. (As

22  evidenced by the reply from Ask.com on February 8, 2008, this allegation appears to be proven true. *See*

23  Clement Decl. at ¶ 5.)

24       Clement understood that this notification was his obligation under the DMCA, and it was his

25  responsibility to defend Maponics' intellectual property from infringement. As the manager of the

26  litigation before the court today, Clement also had every right to notify these potential infringers of the

**MOTION FOR DISMISSAL UNDER**                                                                           **C07-05777**
**FRCP RULES 12(b)(2) AND 12(b)(6)**

existence and status of the lawsuit.  See § III(A) below.  He did so.  As an officer of the company,

Clement also had a duty to attempt to mitigate damages resulting from the defendants' infringement.  *See*

§ III(A)  below.  He did so.

On this record of contacts alone, one cannot expect Clement to have reasonably anticipated being

haled into court in this forum.  As such, the first of the Ninth Circuit's seven reasonableness factors

weighs in favor of dismissing Counterclaimants complaint for a lack of personal jurisdiction.

### b.    Burden on the defendant.

Any reasonableness assessment would be incomplete if it did not include a consideration of the

defendant's burden in litigating the case.  *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir.

1995).  For there will always be some burden associated with requiring a defendant to submit to the

power of a foreign court.  *See Core-Vent Corp.*, 11 F.3d at 1488-89.  It is the nature and quality of this

burden that the law is most concerned with.  *See Panavision Int'l, L.P.*, 141 F.3d at 1323.  If the

defendant is unfairly put at a disadvantage because of the burdens of having to litigate in a foreign

jurisdiction, then this factor weighs against a finding of reasonableness.  *See, e.g.*, *Caruth*, 59 F.3d at 128-

29; *Ziegler*, 64 F.3d at 475; *Chandler*, 985 F. Supp. at 1214.  Here, Clement would face a cognizable

burden if forced to defend himself in California.

Clement is a single individual, not a corporation, and the time and effort it would take to defend

himself in a jurisdiction across the country would be immense.  *See* Clement Decl. ¶ 3.  Although

counsel for Maponics is at present representing Clement for the purposes of this motion, it is anticipated

that Clement will be forced to retain a separate counsel for his defense.

Moreover, these burdens are likely to be significant even with our advances in travel and

technology.  *See Terracom*, 49 F.3d at 561.  Thus, whatever weight is to be given to this factor

clearly favors Clement and a finding of unreasonableness.  *Id.*

### c.    Conflict with sovereignty.

The conflict with sovereignty factor is intended to assess the extent to which an exercise of

jurisdiction by the forum would conflict with the sovereignty interest of potential alternative

forums. *Panavision*, 141 F.3d at 1323. This factor, however, is almost exclusively implicated in cases where at least one defendant is from a foreign country. *See, e.g.*, *Sinatra*, 854 F.2d at 1199- 1200; *Callaway Golf Corp.*, 125 F. Supp. 2d at 1206-07. As such, this factor appears neutral, and has little, if any, bearing on the reasonableness of asserting jurisdiction over Clement.

### d.    Interest of the forum state.

A forum state does not always have an intense interest in litigating a lawsuit initiated within its borders. *Asahi Metal Indus. Co., LTD.*, 480 U.S. at 114. Although Wahl and his company are forum residents, the bulk of their operation has moved to Malasia. *See* Counterclaims at ¶¶ 71, 73, et seq. As discussed above, both Maponics and Clement are residents of Vermont. *See* Clement Decl. ¶¶ 1-2. Although still registered in California, the bulk of Counterclaimants' business operation, it appears, currently resides in the country of Malaysia. *See* Counterclaims at ¶ 71, 73 et seq. If necessary, determining the proportion of Factle's business conducted here may be accomplished through limited discovery into Counterclaimants' tax filings. Accordingly, California's interest in litigating this dispute is greatly reduced, and instead this factor is neutral. *See Sinatra*, 854 F.2d at 1200.

### e.    Efficient Resolution.

The efficient resolution factor is primarily concerned with where the witnesses and evidence are most likely to be located. *E.g. Core-Vent Corp.*, 11 F.3d at 1489; *Callaway Golf Corp.*, 125 F. Supp. 2d at 1207. To be sure, some of the witnesses and evidence will be located in California. However, it is undeniable that some of the witnesses and evidence will also be located outside of California, as both Clement and Maponics are located outside the forum.

Accordingly, this factor appears neutral, not favoring either party. *See Chandler*, 985 F. Supp. at 214-15.

### f.    Importance of the forum to the plaintiff.

Although the importance of the forum to the plaintiff is still a factor in the reasonableness inquiry, it is accorded little significance. *Caruth*, 59 F.3d at 129. This is because the mere preference of the plaintiff for a particular forum is not a factor which routinely affects the substantive fairness of a

**MOTION FOR DISMISSAL UNDER**
**FRCP RULES 12(b)(2) AND 12(b)(6)**

**C07-05777**

court's exercise of personal jurisdiction. *Ziegler*, 64 F.3d at 476; *Core-Vent Corp.*, 11 F.3d at 1490. To prove otherwise, the plaintiff must do more than point out the routine inconveniences that come from litigating a claim in another jurisdiction. *See, e.g.*, *Callaway Golf Corp.*, 125 F. Supp. 2d at 1207-08. Instead, the plaintiff must show that the selected forum is somehow essential to the continued maintenance of the lawsuit. *See Core-Vent Corp.*, 11 F.3d at 1490. In this case, the true defendant and party in interest already is before the court. It is Maponics. Forcing a corporate officer to appear as an individual defendant is intended only to harass the opponent, and force up the costs of pursuing this litigation. In such circumstances, Counterclaimants have not carried their burden of showing that haling Clement into a California forum is essential to the continued maintenance of this suit and thus this factor argues against reasonableness.

### g.    Existence of an alternative forum.

The existence of an alternative forum is a relevant factor in the reasonableness inquiry only to the extent that the plaintiff can show that no alternative exists for the lawsuit. *Caruth*, 59 F.3d at 129. In this case, there is no need for an alternative forum at all, because the true defendant and party in interest already is before the court. It is Maponics. While this factor arguably tilts to the Counterclaimants, the court should not accord it any weight.

Altogether, this analysis argues against a finding of reasonableness and in favor of a dismissal of Counterclaimants' claims against Clement.

### III.    COUNTERCLAIMANTS HAVE FAILED TO STATE A SINGLE TORT CLAIM UPON WHICH RELIEF CAN BE GRANTED AND THUS THESE CLAIMS ALL MUST BE DISMISSED.

Without waiving his challenges to this Court's jurisdiction, Clement and Maponics also move to dismiss the Counterclaims for failure to state a claim. Under Federal Rule of Civil Procedure 12(b)(6), any claim for relief may be dismissed if it is "based on a uncognizable legal theory," "lacks sufficient facts to support a cognizable theory," or discloses an absolute bar to recovery. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Weishbuch v. County of Los Angles*, 119 F.3d 778, 783 (9th Cir. 1997). In testing whether a claim should fail for one of these reasons, the court must accept all

1  of the well-pleaded allegations of material fact contained in the complaint. *See Pareto v. FDIC*, 139 F.3d

2  696, 699 (9th Cir. 1998).

3  However, this does not mean that a court is free to ignore clear or incurable defects. *See Ove v.*

4  *Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001). The touchstone remains whether "it appears beyond any doubt

5  that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

6  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). If so, the plaintiff's claim for relief must be dismissed.

7  *Balistreri*, 901 F.2d at 698-702.

8  Here, none of the Counterclaimants' tort-based causes of action state a valid claim for relief

9  against Clement or Maponics. As a result, these claims should be dismissed.

10

11  **A.      The Defamation Claims.**

12  Charitably construed, the gravamen of the libel per se and trade libel claims for which

13  Counterclaimants seek relief is that Maponics made false statements of fact in this lawsuit, and repeated

14  them in two email communications to Factle customers (and, with no particularity whatsoever, to the

15  "market" at large) which have caused harm to his and/or his company's reputation, contractual

16  relationship and/or future profits. There is no actionable defamation, or any associated tort, pleaded here.

17  First, as a rule, the words constituting an alleged defamatory statement must be specifically

18  identified, if not pleaded verbatim, in the complaint. *See Elleneberger v. Espinosa* 30 Cal.App.4th 943,

19  951 (1994); *Okun v. Superior Court* (1981) 29 Cal.3d 442, 458 [slander action, noting libel rule]; *Kahn v.*

20  *Bower* (1991) 232 Cal.App.3d, 1599, 1612, fn. 5; *des Granges v. Crall* (1915) 27 Cal.App. 313, 315. In

21  several allegations, Counterclaimants have neglected to plead these statements even in the most

22  conclusory form.

23  Accordingly, paragraphs 81, 82, and 95 and any other similarly defective allegations should be

24  stricken, and not considered by the court in its review of this motion.

25  Second, an essential element of libel is that the "publication in question must contain a false

26  statement of *fact*." *Gregory v. McDonnell Douglas Corp*., 17 Cal.3d 596, 600-01 (1976). The emails

27  cited by Counterclaimants are plainly not defamatory to them, or are statements of opinion. Saying Wahl

28

18

or Factle "stole our data" is not per se defamatory.  *Seelig v. Infinity Broadcasting Corp.*, 97 Cal. App. 4th

798, 810 (2002) (the comments are just the type of "name-calling of the 'sticks and stones will break my

bones' variety" that are not actionable defamation). "Thus, 'rhetorical hyperbole,' 'vigorous epithet[s],'

'lusty and imaginative expression[s] of . . . contempt,' and language used in a 'loose, figurative sense'

have all been accorded constitutional protection."  *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401

(1999) (calling lawyer "loser wannabe lawyer," "creepazoid attorney," "little fucker" and "meanest,

greediest, low-blowing motherfuckers" not actionable).

      Here, it is obvious that Clement's alleged email statements that Wahl or Factle "stole our data" is

not a fact statement at all, but a statement of opinion -- and an opinion that has been unambiguously

expressed within the context of a "cease and desist" notification, and the announcement of a lawsuit

against the Counterclaimants.  No reasonable person reading these emails would conclude that the

statement is meant as anything more than a position statement by one party regarding his adversary in a

lawsuit.  This is the purest form of opinion.  It merely repeats the allegations of the lawsuit, albeit in a

more flavorful language.

      This language -- that Wahl or Factle "stole our data" -- is not libelous on its face nor trade libel

because, in context, this is at most merely a colorful laymen's communication of opinion expressing the

*very same information* contained in the Complaint.  The context for all the communications cited in the

Counterclaims is that Maponics had filed suit against Wahl and Factle, and believed it had been

vindicated as a result of the default judgment entry.  Saying Wahl "stole" the data is the same as saying

that, as stated in the Complaint, Maponics believed that Wahl and/or Factle had violated Maponics

intellectual property rights.

      Even if this statement is regarded as of mixed fact and opinion, Maponics and Clement had more

than a good faith belief that the entirety of these statements was true in late January 2008 at the time of

utterance, given the Counterclaimants' failure to respond to the suit and the entry of a default judgment

against them.  Put another way, this was a "true" statement at the time it was uttered, and was not

actionable.  Maponics had obtained a default judgment at the time the cited emails were sent.  Only *false*

1    statements of fact are actionable, and the "stole our code" statement had been adjudicated as not

2    actionably false in an important respect – the clerk had issued a judgment that Maponics was entitled to

3    relief.

4         And more fundamentally, given the recent admission by Counterclaimants' lawyer in a recent

5    informal discovery exchange communication that his clients had in fact *distributed the copyrighted*

6    *materials after July 29, 2007* -- after the license expired -- this is a substantially true statement today.  *See*

7    attached Request for Judicial Notice at ¶ 1 and <u>Exhibit A</u> thereto.[6]

8

9         Third, the Counterclaimants fail to plead "special damages" as required under Civil Code § 45a:

10    "Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that

11    he has suffered special damage as a proximate result thereof."  *Id.*  This allegation is facially defective

12    because, first, it does not even allege that any action by Clement or Maponics *caused the loss*.  *See*

13    Counterclaims at ¶ 96.

14         Next, the Counterclaimant states only that *Factle* (not Wahl, individually) lost "several

15    prospective customers . . . directly causing it millions in lost revenues."  *Id.*  Finally, the Counterclaims

16    cite that Factle lost "several prospective customers . . . directly causing it millions in lost revenues" but

17    fails to either identify the customers, or state how the email messages cited in the Counterclaims led

18    directly to the loss.  This level of generality will not do.  Counterclaimants' assertion that these alleged

19    torts have cost them "millions of dollars" is a complete farce, and completely undercut on the face of the

20    pleadings.  Counterclaimants do not deny that the only Factle clients identified as having been contacted

21    by Clement – Ask.com and Toursheet – *remain Factle clients*.

22

23         Fourth and most fundamentally, the mere posting of an internet message restating (albeit in more

24    colorful language) the very same allegations as are stated in the Complaint, and notifying potential

25    infringers about the same allegations and status of the lawsuit, is absolutely privileged under Civil Code §

26

27    _____

28    [6]  The Counterdefendants recognize, of course, that Counterclaimants have alleged that the copyright that Wahl obtained and assigned to HomeGain is not enforceable; this is a separate issue than infringement.

**MOTION FOR DISMISSAL UNDER**                                                    **C07-05777**
**FRCP RULES 12(b)(2) AND 12(b)(6)**

47, subdivision (b).  This statute provides in relevant part:  "A privileged publication or broadcast is one made:  . . . (b) . . . (3) in any other official proceeding authorized by law . . . ."

> [T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.

*Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990).

A primary object of filing this litigation is to put on notice potential infringers of Maponics' copyright (including the Does) that the lawsuit has in fact been filed, in order to deter additional infringement and to effect a mitigation of continuing damages.  The privilege applies to communications effectuating this object,  "even though the publication is made outside the courtroom and no function of the court or its officers is involved."  *Ibid.*  As evidenced by the February 8, 2008 email from Howard Steinberg from Ask.com, this notice by Maponics appears to have been prudent and justified by Ask.com's agreement to "…initiate the removal of the data at issue from our systems."  *See* Clement Decl. at ¶¶ 5-6.

The privilege is *absolute*, and it applies to *all torts* except malicious prosecution.  *Id.* at pp. 215-216.  As the California Supreme Court recently reaffirmed, "both the effective administration of justice and the citizen's right of access to the government would be threatened by permitting tort liability for communications connected with judicial or other official proceedings."  *Hagberg v. California Federal Bank FSB* (2004) 32 Cal.4th 350, 360-61.

The privilege is to be given "an expansive reach."  *Rubin v. Green* (1993) 4 Cal.4th 1187, 1194.  "Any doubt as to whether the privilege applies is resolved in favor of applying it."  *Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529 [citations omitted]; *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913.

Moreover, Maponics and Clement's notice to two potential copyright infringers to cease and desist is also absolutely privileged.  Such notice is the legally mandated requirement for notifying potential infringers who operate web sites, pursuant to Section 512(c)(3) of the Digital Millenium Copyright Act ("DMCA").  The DMCA exempts Internet service providers that meet the criteria set forth

21

1   in the safe harbor provisions from claims of copyright infringement made against them that result from

2   the conduct of third parties, such as Wahl or Factle.  Once notice is given to the service provider, or in

3   those circumstances where the service provider itself discovers the infringing material itself, it is required

4   to expeditiously remove, or disable access to, the material.

5       A significant part of the statements, alleged in the Counterclaims, made by Clement to third

6   parties regarding the origin of the neighborhood mapping data from HomeGain, and that neither Factle

7   nor Wahl had the right to license said neighborhood mapping data, was made pursuant to the above-

8   referenced provisions of the DMCA, as part of the safe harbor notification provisions to service providers,

9   informing them that the copyrighted materials in dispute were infringing and should be removed.  As

10  such, these statements were made as part of a judicial process, and are completely shielded by privilege

11  from claims of defamation and/or libel.

12

13      Finally, with respect to the alleged posting of defamatory trade libel and/or per se statements on

14  Maponics' own website, none of this language constitutes any sort of any actionable defamation.  First,

15  this allegation fails to identify the poster.  Next, Counterclaimants fail to provide a copy of the posting.

16  Next, the "1000+ sources" language does not in any way impugn any work that Factle may have

17  performed in assembling the data (as a work for hire) on behalf of HomeGain, prior to HomeGain's sale

18  of the product to Maponics.[7]  Additional information would be needed to draw any inference regarding

19  Factle or Wahl, who are not even mentioned by name.  And it would be quite unreasonable for an

20  ordinary person to draw a defamatory inference from this alleged posting.  *See* Counterclaims at ¶ 83.

21

22      Similarly, attributing the Ask.com data set to Maponics was undeniably accurate, and would not

23  be even arguably defamatory absent very significant additional information about the prior involvement

24  of Factle, and its customer list as of July 2007.[8]  It is not trade libel for the same reasons.

25  _____

26  [7] Ironically, the suggestion for this language came directly from HomeGain, from whom Maponics purchased the software product and mapping data.  *See* Clement Decl. at ¶ 9.

27  [8] And as of July 2007, Clement had no idea that Factle had provided anything to Ask.com.  *See* Clement Decl. at ¶ 9.

28

**MOTION FOR DISMISSAL UNDER**                                                    **C07-05777**
**FRCP RULES 12(b)(2) AND 12(b)(6)**

1    But most problematic of all, Counterclaimants allege that the post went up "during July 2007 and

2    prior to July 29, 2007." This is an outright impossibility. Maponics did not have a blog on its website

3    until 2008. *See* Clement Decl. at ¶ 9. Perhaps this explains why Counterclaimants made this pleading

4    only on information and belief, and have failed to satisfy the minimal requirements for particularity in

5    making such allegations under FRCP Rule 9(b).

6        **B.    The Interference Claims.**

7        As explained above, the sending of a cease and desist communication as part of an attempt to

8    resolve a legal dispute, and any resulting settlement discussions, is absolutely privileged under

9    California's litigation and common interest privileges, codified in California Civ. Code §47, subds. (b)

10   and (c)). These communications cannot be a basis for liability for any tort claim except malicious

11   prosecution. *Blatty v. New York Times Co.*, 42 Cal. 3d 1033 (1986). Accord, *Hustler Magazine v.*

12   *Falwell*, 485 U.S. 46, 52-53, 56 (1988).

13       In *Blatty*, the California Supreme Court dismissed interference with economic advantage claims

14   arising from an allegedly defamatory statement and enunciated the controlling rule:

15

16       Not only does logic compel the conclusion that First Amendment limitations are applicable to all
         claims, of whatever label, whose gravamen is the alleged injurious falsehood of a statement, but
17       so too does a very pragmatic concern. If these limitations applied only to actions denominated
         "defamation," they would furnish little if any protection to free-speech . . . : plaintiffs . . . might
18       simply affix a label other than "defamation" to their injurious-falsehood claims . . . and thereby
         avoid the operation of the limitations and frustrate their underlying purpose.  *Blatty*, 42 Cal. 3d at
19       1044-1045 (internal citation omitted).

20       Moreover, an essential element of a tortious interference claim is that defendant's conduct

21   actually disrupted or breached the plaintiff's contract or economic relationship.[9]  *Korea Supply v.*

22   *Lockheed Martin Co.*, 29 Cal. 4th 1134, at 1153 (2003*); Applied Equipment Corp. v. Litton Saudi Arabia*

23   *Ltd.* 7 Cal.4th 503, 514, n. 5 (1994). The Counterclaimants have failed to plead which contracts or

24

25   _____

26   [9]  Another key element of the cause of action is, "…proving that the defendant not only knowingly interfered with
     the plaintiff's expectancy (of contract or of a profitable business relationship), but also that defendant engaged in
27   conduct that was wrongful "by some legal measure other than the mere fact of the interference itself." *See Delta
     Penna v Toyota Motor Sales, Inc.*, 11 Cal. App. 4th 376 (1995). Counterclaimants cannot demonstrate that the
28   alleged conduct was anything but pro-competitive.

**MOTION FOR DISMISSAL UNDER**                                                    **C07-05777**
**FRCP RULES 12(b)(2) AND 12(b)(6)**

1  relationships were disrupted, how they were disrupted by these email statements or any action by

2  Maponics or Clement, or to allege the resulting damage.

3  **C.    The Unfair Competition Law Claim.**

4  Finally, the Counterclaimants do not plead any separate facts constituting this claim under

5  California's UCL provisions.  A Business and Professions Code § 17200 claim may be derivative of other

6  claims, but here, none of their tort claims are actionable.  Counterclaimants thus have not pleaded any

7  actionable claims that may provide a basis for UCL relief.

8

9  DATED:  May 7, 2008                LAW OFFICES OF GEORGE FROST

10

11

12                                    By ____/s/ George Frost_____
                                         George Frost
13                                       Alex Volchegursky
                                         Attorneys for Plaintiff
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ALLEGATIONS.................................................. 2

    A. Procedural Background................................................................................ 2

    B. Summary of Maponics' Allegations....................................................... 3

    C. Summary of Counterclaimants' Allegations.................................... 4

II. COUNTERCLAIMANTS' CLAIMS AGAINST CLEMENT MUST BE DISMISSED    6
FOR LACK OF PERSONAL JURISDICTION................................................................

    A. Clement's Individual Contacts With the Forum State Are Not Sufficient to   7
    Establish General Jurisdiction............................................................

    B. The Contacts Clement Allegedly Had With California Cannot Support a Finding   9
    of Specific Jurisdiction...........................................................................

        1. Clement did not purposefully avail himself of the privileges of conducting  10
        activities within the forum state..................................................

        2. This Court's exercise of personal jurisdiction over Clement would be  13
        unreasonable...........................................................................

            a. Extent of the defendant's interjection............................. 14

            b. Burden on the defendant................................................. 15

            c. Conflict with sovereignty............................................... 15

            d. Interest of the forum state.............................................. 16

            e. Efficient resolution......................................................... 16

            f. Importance of forum to the plaintiff............................... 16

            g. Existence of an alternative forum.................................. 17

II. COUNTERCLAIMANTS' HAVE FAILED TO STATE A SINGLE TORT CLAIM   17
UPON WHICH RELIEF CAN BE GRANTED AND THUS THESE CLAIMS ALL MUST
BE DSIMISSED.........................................................................................

    A. The Defamation Claims...................................................................... 18

    B. The Interference Claims...................................................................... 23

    C. The Unfair Competition Law Claim................................................. 24

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

4

1. *Asahi Metal Indus Co. v. Superior Court*, 480 U.S. 102, 113 (1987)………………………    6, 16

5

2. *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1415 (9th Cir. 1989)……………………..    6

6

3. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)…………………………………    6

7

4. *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 824 (N.D. Cal. 1992)…………………    6, 9, 10

8

5. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'antisemitisme,* 433 F.3d at 1199 (9th Cir. 2006)…………………………………………………………………………………………    6, 9, 11, 12

9

10

6. *Sher v. Johnson*, 911 F.2d 1357, 1360 (9th Cir. 1990)…………………………………………    6

11

7. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)……………………    6, 9, 14, 16

12

8. *Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1104 n.3 (C.D. Cal. 2001)……………………    6

13

9. *Concat LP v. Unilever*, 350 F. Supp. 2d 796, 810 (N.D. Cal. 2004)…………………………..    6

14

10. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarian Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002)…………………………………………………………………………………………    7

15

16

11. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127 (9th Cir. 1995)…………………    7, 10, 15, 16

17

18

12. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-02 (9th Cir. 2004)………..    7, 8, 9, 11

19

13. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)………………    7

20

14. *Amba Mktg. Sys. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)……………………..    7

21

15. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986)…………………………………………    7

22

23

16. *Newport Components, Inc. v. NEC Home Elecs., Inc.*, 671 F. Supp. 1525, 1530 (C.D. Cal. 1989)…………………………………………………………………………………………    7

24

17. *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)…    7

25

18. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-18 (1984)……………...    7

26

19. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006)………………    8

27

20. *CFA N. Cal. Inc. v. CRT Partners, LLP*, 378 F. Supp. 2d 1177, 1183 (N.D. Cal. 2005)…..    8

28

21. *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1544 (10th Cir. 1996)…    8, 9

**MOTION FOR DISMISSAL UNDER**
**FRCP RULES 12(b)(2) AND 12(b)(6)**                                                    C07-05777

22. *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993)……...    8, 9

23. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984)…………………………    9

24. *Burger King Corp. v. Rudzweicz*, 471 U.S. 462, 475 (1985)…………………………………..    9, 11

25. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)………………………………………    9

26. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)………………………………....    9

27. *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980)…………………....    10

28. *Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1485 (9th Cir. 1993)……………………...    10, 13, 14, 15, 16, 17

29. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)…………………………    10, 11, 13

30. *Forsythe v. Overmyer*, 576 F.2d 779, 782 (9th Cir. 1978)…………………………………….    10

31. *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1199-1204 (C.D. Cal. 2000)…………………………………………………………………………………....    10, 13, 16, 17

32. *Chandler v. Roy*, 985 F. Supp. 1205, 1212-13 (D. Ariz. 1997)………………………………    10, 15, 16

33. *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)………………….    11, 16

34. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986)………    11

35. *Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1140-41 (N.D. Cal. 2005)……………………………………………………………………………………………..    11, 14

36. *Davis v. American Family Mutual Insurance Company*, 861 F.2d 1159, 1162-63 (9th Cir. 1988)……………………………………………………………………………………………..    11, 12

37. *Calder v. Jones*, 465 U.S.783 (1984)…………………………………………………………..    12

38. *Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1247 (9th Cir. 1984)……………………………..    12

39. *Ochoa v. J.B. Martin & Sons Farms*, 287 F.3d 1182, 1192 (9th Cir. 2002)……………….    13

40. *U.S. Vestor, LLC v. Biodata Info. Tech. AG*, 290 F. Supp. 2d 1057, 1066 (N.D. Cal. 2003)    13

41. *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073-76 (9th Cir. 1986)………………………….    13

42. *Ziegler v. Indian River County*, 64 F.3d 470, 475 (9th Cir. 1995)…………………………..    14, 16

43. *Data Disc, Inc. v. Systems Tech. Assocs.*, 557 F.2d 1280, 1288 (9th Cir. 1977)…………....    14

**MOTION FOR DISMISSAL UNDER**
**FRCP RULES 12(b)(2) AND 12(b)(6)**

**C07-05777**

44. *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981)………….. 14

45. *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995)……………………… 15

46. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)…………………… 17, 18

47. *Weishbuch v. County of Los Angles*, 119 F.3d 778, 783 (9th Cir. 1997)………………….. 17

48. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998)……………………………………….. 18

49. *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001)…………………………………………….. 18

50. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)………………………………………………….. 18

51. *Elleneberger v. Espinosa* 30 Cal.App.4th 943, 951 (1994)…………………………………… 18

52. *Okun v. Superior* Court, 29 Cal.3d 442, 458 (1981)………………………………………….. 18

53. *Kahn v. Bower*, 232 Cal.App.3d, 1599, 1612 (1991)…………………………………………. 18

54. *des Granges v. Crall*, 27 Cal.App. 313, 315 (1915)………………………………………….. 18

55. *Gregory v. McDonnell Douglas Corp.*, 17 Cal.3d 596, 600-01 (1976)……………………… 19

56. *Seelig v. Infinity Broadcasting Corp.*, 97 Cal. App. 4th 798, 810 (2002)………………….. 19

57. *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999)………………………………….. 19

58. *Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990)……………………………………………… 21

59. *Hagberg v. California Federal Bank FSB*, 32 Cal.4th 350, 360 (2004)…………………….. 21

60. *Rubin v. Green*, 4 Cal.4th 1187, 1194 (1993)………………………………………………….. 21

61. 61*Adams v. Superior Court*, 2 Cal.App.4th 521, 529 (1992)……...…………………………. 21

62. *Kashian v. Harriman*, 98 Cal.App.4th 892, 913 (2002)………………………………………. 21

63. *Blatty v. New York Times Co.*, 42 Cal. 3d 1033 (1986)……………………………………… 22

64. *Hustler Magazine v. Falwell*, 485 U.S. 46, 52-53, 56 (1988)……………………………….. 22

65. *Korea Supply v. Lockheed Martin Co.*, 29 Cal. 4th 1134, at 1153 (2003)………………….. 23

66. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* 7 Cal.4th 503, 514, n. 5 (1994)……. 23

67. *Delta Penna v. Toyota Motor Sales, Inc.*, 11 Cal. App. 4th 376 (1995)……………………. 23

## **Statutes**

1. Fed. Rule Civ. Proc. § 12(b)(2)……………………………..…………………………...……………. 3

**MOTION FOR DISMISSAL UNDER**
**FRCP RULES 12(b)(2) AND 12(b)(6)**                                          **C07-05777**

2. Fed. Rule Civ. Proc. § 12(b)(6)………….…………………………..……………..    3

3. Cal. Bus. & Prof. Code § 17200…………….………………..…………………    4, 24

4. Cal. Civ. Proc. Code § 410.10……………………………………………………    6

5. Digital Milenium Copyright Act………………………………………………    10, 12, 14, 21

6. Cal. Civ. Code § 45a………………………………………………………………    20

7. Cal. Civ. Code § 47(b)……………………………………………………………    20, 21, 23

**MOTION FOR DISMISSAL UNDER**
**FRCP RULES 12(b)(2) AND 12(b)(6)**

**C07-05777**