George Frost (CA Bar # 158728)
2930 Magnolia Street
Berkeley, CA 94705
Telephone: (510) 666-0141
Facsimile: (510)_295-2562
geofrost@comcast.net

Alexander Volchegursky (CA Bar # 209172)
235 Montgomery Street, Suite 600
San Francisco, CA 94104
Telephone: (415) 986-4000
Facsimile: (415) 986-4001

Attorneys for Plaintiff
Maponics, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| MAPONICS, LLC, a Vermont limited liability company,<br><br>    Plaintiff,<br>  vs.<br><br>BERNT WAHL, an individual; FACTLE, a California corporation; and DOES 1-20, inclusive<br><br>    Defendants. | Case No.: C07-05777<br><br>**REPLY**<br><br>**DATE:** July 16, 2008<br>**TIME:** 10:00 a.m.<br>**JUDGE**: Hon. Bernard Zimmerman |
| AND RELATED [PENDING] CROSS-ACTION | |

This Reply addresses Counterclaimants' separate motions and memoranda relating to their oppositions to the 12(b)(2) and 12(b)(6) motions, as well as the motions to strike. Counterdefendants agree that their own earlier papers should separately state motions for each form of relief, and submit an amended Motion herewith.

## I. COUNTERCLAIMANTS' HAVE FAILED TO DEMONSTRATE PERSONAL JURISDICTION.

Counterclaimants have failed to show they can satisfy the minimal pleading requirements for personal jurisdiction over Clement as an individual, either generally or based on limited contacts. Nor is personal jurisdiction "reasonable" on this pleading. This failure requires an immediate dismissal of the claims against Clement. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 807 (9th Cir. 2004).

As explained in Counterdefendants' original briefing, *all* of Counterclaimants' tort claims, as well as the derivative §17200 claim, are based on the same set of operative facts, namely: a single alleged internet posting on the Maponics website during July 2007 (*see* ¶ 83 of Counterclaims) and two sets of email communications between Clement and website managers, including those at IAC subsidiary Ask.com, (*see* ¶¶ 89 of Counterclaims) and Toursheet.com (*see* ¶90 of Counterclaims).

The remaining defamation allegations, specifically ¶¶ 81, 82, and 95, are pleaded on information and belief only, and each (including ¶ 83) is insufficient as a matter of law to state a cause of action. As earlier requested, these should be stricken and should not be considered by the Court in its 12(b)(2) or 12(b)(6) analysis.

Counterclaimants argue that specific jurisdiction exists because Clement "purposefully and intentionally directed his tortuous conduct at California" when Clement emailed others saying that Wahl "stole the mapping data." *See* Counterclaimants' 12(b)(2) Opp. Memo at 3. Yet the Ninth Circuit has long required "something more" than the foreseeable effect of a communication upon a California business in order to find personal jurisdiction in these

circumstances.[1]  *Schwarzenegger v. Fred Martin Motor Co*. 374 F.3d at 807.  As a recent Ninth Circuit opinion explained regarding the *Schwarzenegger* holding:

> We concluded that, without "something more" than possible effect, there was simply no individualized targeting of California, or the type of wrongful conduct, that could be construed as being directed at the forum state.

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006).

As demonstrated in Counterdefendants' earlier briefing, the communications cited in the Counterclaims were not "expressly aimed" at the forum state.  They were directed to corporate managers via email whom Clement believed were based in New York (IAC), or elsewhere.  *Id.*  The communications themselves – even as misleadingly quoted in the Counterclaims -- demonstrate they are quite clearly "cease and desist" communications directed to potential infringers, in which Clement sought to advise them of the existence of this lawsuit and obtain information that might bear on the extent of the infringement and damages.   All the emails cited with particularity by Counterclaimants are dated after the onset of this litigation; Counterclaimants have failed to point to *any* nonprivileged communication in their Complaint that show a basis for personal jurisdiction over Clement.

Moreover, it is absurd to baldly claim (and particularly so without pointing to any

---

[1] The Ninth Circuit has resisted a cut and dried application as apparently urged by Counterclaimants of the "effects" analysis in *Calder v. Jones*, 465 U.S.783 (1984): "Subsequent cases have struggled somewhat with *Calder*'s import, recognizing that the case cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction."  *Bancroft & Masters, Inc. v. Augusta Natl. Inc*., 223 F.3d 1082, 1087 (9th Cir. 2000).  Numerous other circuit courts have similarly narrowed the scope of, or added additional factors to the analysis of, the effects analysis developed in *Calder*: *See e.g. U.S. v. Swiss American Bank, Ltd*., 274 F.3d 610, 624 (1st Cir. 2001) (holding that "*Calder*'s 'effects' test is relevant only to the purposeful availment prong" of a minimum contacts analysis and stating, "whether *Calder* was ever intended to apply to numerous other torts, such as conversion or breach of contract, is unclear"); *Remick v. Manfredy*, 238 F.3d 248, 258-59 (3d Cir. 2001) (requiring forum targeting beyond mere targeting of a plaintiff residing within the forum); *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc*., 334 F.3d 390, 397-98 (4th Cir. 2003); *Brokerwood Intl. (U.S.) v. Cuisine Crotone, Inc*, 104 Fed.Appx. 376, 382 (5th Cir. 2004) " '[T]he effects test is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state.' " *Id*. (citing *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997).  *Also see Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002), in which the Fifth Circuit found no personal jurisdiction over a nonresident who posted an alleged defamatory article on an Internet bulletin board, noting that the offending article lacked any reference to Texas or Texas activities and that the defendant was unaware that the plaintiff resided in Texas at the time the article was posted.

foundational allegations in the Counterclaims) that Clement "committed acts of trade libel" by claiming, on behalf of Maponics, the firm's ownership of its own mapping product. It is undisputed that Counterclaimants never "owned" this product, or the data that was incorporated into it. Counterclaimants have admitted in their pleadings to creating it as a work for hire for HomeGain, which in turn sold the mapping product to Maponics. None of the identified communications by Clement is "targeting" California, nor is it even "wrongful conduct." Indeed, these communications are absolutely privileged and cannot form the basis for personal jurisdiction over Clement. *See* § III below.

Finally, regardless of whether there has been a sufficient showing of purposeful availment, Counterclaimants have not demonstrated that the assertion of personal jurisdiction over Clement is reasonable, i.e., that it does not violate "traditional notions of fair play and substantial justice." *See, e.g.*, *Ochoa v. J.B. Martin & Sons Farms*, 287 F.3d 1182, 1192 (9th Cir. 2002). As applied here, the totality of all the factors argues against a finding of reasonableness.

Most importantly: Clement's alleged individual contacts with the forum consists of sending a handful of emails to the corporate managers of two web sites, notifying them that they were potentially infringing upon the copyrighted mapping material belonging to his employer. He did this solely in his capacity as a manager of a corporation based in Vermont, not individually. On this record of contacts alone, Clement cannot have reasonably anticipated being personally dragged into court here.

Next, Clement is a single individual, not a corporation, and the time and effort it would take to defend himself in a jurisdiction across the country would be immense. *See* Clement

Decl. ¶ 3. Clement should not be placed in the trying situation of having to oversee litigation on behalf of Maponics, while defending himself personally.

Next, California's interest in this litigation is attenuated. Although still registered here, the bulk of Counterclaimants' business operation resides in the country of Malaysia. *See* Counterclaims at ¶ 71, 73. Neither Wahl nor Factle has provided the Court or opposing counsel with a physical address within California, and all attempts to serve them at the address listed for the agent for service of process failed.

Finally, Maponics is itself before the Court. Maponics is the real party in interest, not Clement, and stands ready to assume liability for any torts that might be found against Clement. Maponics has made this offer to Counterclaimants, who instead are pursuing a game of personal "gotcha."

### A. Counterclaimants Have Failed to Demonstrate Any Need for Jurisdictional Discovery.

Counterclaimants also have moved to postpone the Court's jurisdictional ruling (and stall all progress in this case) by conducting a jurisdictional fishing expedition. Yet Counterclaimants do not explain why this discovery is needed, or how it would aid the Court in determining jurisdiction, except to say they believe Clement had discussions with managers at Microsoft and other companies that might give them a better footing to hale Clement into court here.

The Court should deny this motion. A hunch is not nearly good enough. This research should have been performed prior to naming Clement as an individual defendant, not after.

If the Court does order discovery regarding jurisdiction over Clement, or into the basis

for the Counterdefendants' 12(b)(6) motion, Counterdefendants request that *all* discovery be ordered to proceed. Counterclaimants have already tried to block even informal discovery by Maponics of HomeGain, and appear bent on delaying their day of reckoning as long as possible. This is improper.

## II. COUNTERCLAIMANTS HAVE FAILED TO STATE A SINGLE TORT CLAIM UPON WHICH RELIEF CAN BE GRANTED AND THUS THESE CLAIMS MUST BE DISMISSED.

Instead of demonstrating that they have properly stated claims for relief on their tort claims, Counterclaimants instead try to hide behind a technicality – that Clement has "improperly" attached the actual emails that comprise their alleged defamation claims to his Declaration, and therefore the Court must convert this 12(b)(6) motion to one for summary judgment.

Let's be clear here: these emails are attached to show the quality and extent of the "contacts" that Clement had with the forum, as part of his 12(b)(2) motion. These contacts, of course, also are the very same statements that Counterclaimants allege as the basis for their tort claims, and so we have occasionally made reference to them in the 12(b)(6) argument. It would seem almost odd not to do so.

However, we do not wish to convert this motion to one for summary judgment. We therefore join with Counterclaimants and ask the Court to strike these emails (although not the letter from Factle counsel as to which we request judicial notice[2]) for the purposes of the 12(b)6) motion *only*, but not for the 12(b)(2) motion.

Even on the face of the Counterclaims alone, there is no there, there. First,

---

[2] We ask the Court to take judicial notice of this party admission, a communication by Counterclaimant's own lawyer which is readily ascertainable by a simple Rule 11 question to counsel.

Counterclaimants have failed to specifically plead the words constituting several of the alleged tortuous statements. *See Ellenberger v. Espinosa* 30 Cal.App.4th 943, 951 (1994); *Okun v. Superior Court* (1981) 29 Cal.3d 442, 458 [slander action, noting libel rule]; *Kahn v. Bower* (1991) 232 Cal.App.3d, 1599, 1612, fn. 5.  Accordingly, ¶¶ 81, 82, 83, and 95 and all other similarly defective allegations should be stricken and not be considered by the court in its review of this motion.

As noted above, Counterclaimants cite only two email communications with any specificity.  The text is as follows:

89. On January 25, 2008, prior to WAHL and FACTLE being served with the Summons and Complaint in this action, CLEMENT sent an email to Howard Steinberg of Ask.com stating that the neighborhood mapping data used by Ask.com is MAPONICS data and that WAHL "does not deny that it is actually our data and that he has infringed on our copyright." CLEMENT further told Mr. Steinberg in the email that "you can understand how upset we were when we found that Bernt stole our data." CLEMENT also told Mr. Steinberg in the email that "I do need to talk to someone there about replacing the Factle Maps copyright with the Maponics copyright. Who should I talk to about that?" CLEMENT went on in his email to tell Mr. Steinberg: "As an aside, our latest release has almost twice as many neighborhoods as the data Bernt provided to you (and we have none of the topological errors his version had). We are willing to provide you a free upgrade if you like."

And:

90. On or about February 11, 2008, the Founder and CEO of TourSheet, LLC, a FACTLE licensee of HomeGain neighborhood mapping data, received an email from CLEMENT advising TourSheet to discontinue use of the neighborhood mapping data that it had licensed from FACTLE because "FACTLE stole our [MAPONICS] data."

Even if the Court analyzes only the incomplete and misleading snippets provided by Counterclaimants, and ignores Clement's Declaration and the attached emails, it is clear that these communications are not libelous or trade libel *per se*, and moreover are subject to an absolute privilege.

The quoted statements are statements of opinion, not fact, and the language, "Bernt

stole our data" merely reiterates the very same claims – albeit in colorful laymen's language – that are now before the court in this litigation. Although decrying this argument as "outrageous," Counterclaimants fail to cite any authority to counter the many cases presented in Counterdefendants' briefing.

And the argument that a "single word" may be found to be defamatory is obviously true, but utterly misses the point. *See* Counterclaimants' 12(b)(6) Opp. Memo .at 6. It would be improper, indeed a fraud on the Court, to try to focus the Court's defamation inquiry to a single snippet of colorful language without presenting it in the context of its publication. Nor is there any need to guess at Clement's "intent;" in the plain context of the alleged statements themselves, there is no libel here.

Most important, Counterclaimants have failed to show that they have pleaded any allegations not subject to the litigation privilege. Counterclaimants contend: "They (the alleged statements) were ***not made in the context of the litigation***, they were not statements made in pleadings, and they were not statements made in open court." See Cal. Civil Code Section 47.1

This is silly. Of course these are statements made in the context of the litigation. The statements themselves *refer to the litigation*. On their face, these are notifications to potential infringers of the existence of this very lawsuit, at a point *after Wahl and Factle had defaulted*. These communications demonstrate Maponics' attempt to investigate the extent of infringement and mitigate damages arising from it; these are objects and goals of the present litigation. This is the essence of the litigation privilege.

If there was any doubt that these communications took place in a "litigation context," Counterclaimants themselves dispel it by contending in their own briefing as follows:

> More important, they go far beyond a simple description of the litigation, especially when Clement and Maponics knew that Wahl not only had the right to resell HomeGain's product, he created the HomeGain mapping data product.

Counterclaimants' 12(b)(6) Opp. Memo at 7.

This is a classic negative pregnant: an admission that these emails do indeed provide a "description of the litigation." Nothing more is needed to demonstrate they fall within the privilege.

The litigation privilege is codified in Civil Code § 47:  "[a] privileged publication or broadcast is one made . . . [i]n any . . . judicial  proceeding . . . ."  (§ 47, subd. (b)).  The privilege recognized in § 47 derives from common law principles establishing a defense to the tort of defamation. *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal.3d 1157, 1163 (1986).  Although originally enacted with reference to defamation, the privilege is now held applicable to any communication, whether or not it amounts to a publication, and all torts except malicious prosecution. *Id.*

Further, it applies to any publication required *or permitted* by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved.  "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings;  (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the  action." *Silberg v. Anderson* (1990)  50 Cal.3d 205, 212 (*Silberg*).   Thus, "communications with 'some relation' to judicial proceedings" are "absolutely immune from tort liability" by the litigation privilege. *Rubin v. Green*, 4 Cal.4th 1187, 1193 (1993).

The litigation privilege is not limited to statements made during a trial or other

proceedings, but may extend to steps taken prior thereto, or afterwards.  5 Witkin, Summary of Cal. Law, *supra,* Torts, §§ 470, 505, pp. 554, 591.

These statements alleged by Clement are absolutely privileged, and provide no basis for any of the tort claims (which all rely upon them) alleged by Counterclaimants.

DATED:  June 4, 2008                              LAW OFFICES OF GEORGE FROST


                                                  By      /s/ George Frost
                                                      George Frost
                                                      Alex Volchegursky
                                                      Attorneys for Plaintiff